IRVING, J.,
 

 for the Court.
 

 ¶ 1. Sharon and Gary Davis were divorced on November 30, 2000, with Sharon being granted physical custody of the parties’ minor children. Gary later filed a petition in the Chancery Court of Ranking County, seeking to change custody.
 
 [1]
 
 Gary also filed a petition seeking to hold Sharon in contempt. The chancery court found that a material change in circumstances had occurred and ordered that the primary physical custody of Kristi be changed from Sharon to Gary. The court also found Sharon in contempt and sentenced her to serve sixty days in jail, with thirty days suspended.
 

 ¶ 2. Aggrieved, Sharon appeals and alleges that the court erred in modifying custody, in finding her in contempt, and in sentencing her to jail without the benefit of counsel. Finding no reversible error, we affirm.
 

 
 *117
 
 FACTS
 

 ¶ 3. Sharon and Gary were granted a divorce on November 30, 2000, by the Rankin County Chancery Court. Sharon was awarded physical custody of the couple’s three minor children: Kelly, Jared, and Kristi. Gary was awarded visitation. On November 10, 2006, Gary filed a petition for modification of custody and a petition for contempt, alleging that Sharon had failed to comply with the visitation provisions of the court’s order, as well as a provision requiring that she produce an accounting of funds being held for the benefit of the children under the Uniform Transfers to Minors Act. On November 29, 2006, the court granted a continuance primarily so that Sharon could obtain counsel. In regard to the visitation, Gary claimed that often when he had gone to the designated meeting place to pick up Kristi, she either would not be there or, being there, she would get out of the car of the person who had brought her but would immediately reenter it. Sharon claimed that she could not personally take Kristi to the designated drop-off place because she was enrolled in evening classes. Additionally, she claimed that she had a cardiac condition.
 

 ¶ 4. Part of the evidence considered by the chancellor on the modification issue involved a situation with Sharon and a letter that she had left for one of Kristi’s schoolmates in front of the child’s locker. In the letter, Sharon ranted and raved against the student’s parents because of their social and economic status. The chancellor viewed this incident as probative evidence of Sharon’s emotional state, impacting the ultimate issue of whether Kristi should be removed from her custody-
 

 11 5. After viewing the evidence, the court concluded that there had been a material change in circumstances. The court also found Sharon in “contumacious contempt” for failing to allow visitation and for failing to provide an accounting of the children’s college funds. Accordingly, the court, finding that it would be in Kristi’s best interest, awarded custody to Gary. Further, the court committed Sharon to the Rankin County Jail for a period of sixty days, with thirty days suspended for good behavior.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Modification of Custody
 

 ¶ 6. In matters involving child custody, our standard of review is limited.
 
 Floyd v. Floyd,
 
 949 So.2d 26, 28(¶ 5) (Miss.2007). The chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for an appellate court to reverse.
 
 Id.
 
 (citing
 
 Powell v. Ayars,
 
 792 So.2d 240, 243(¶ 6) (Miss.2001)). Further, a chancellor’s factual findings will not be reversed when there is substantial evidence in the record supporting those findings of fact.
 
 Id.
 
 (citing
 
 Cooper v. Crabb,
 
 587 So.2d 236, 239 (Miss.1991)).
 

 ¶ 7. In proceedings to modify child custody, the test for modification is: (1) whether there has been a material change in circumstances which adversely affects the welfare of the child, and (2) whether the best interest of the child requires a change of custody.
 
 Weigand v. Houghton,
 
 730 So.2d 581, 585(¶ 15) (Miss.1999) (citing
 
 Smith v. Jones,
 
 654 So.2d 480, 486 (Miss.1995)). When determining whether modification is necessary, all evidence shall be viewed in light of the totality of the circumstances.
 
 Id.
 
 (citing
 
 Ash v. Ash,
 
 622 So.2d 1264, 1266 (Miss.1993)).
 

 ¶ 8. It is well settled that “the polestar consideration in child custody cases is the best interest and welfare of the child.”
 
 Albright v. Albright,
 
 437 So.2d
 
 *118
 
 1003, 1005 (Miss.1983). The factors used to determine the child’s best interests are: (1) age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare; (4) the employment of the parent and the responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 

 ¶ 9. In finding that a material change in circumstances had occurred, the chancellor stated: “These things in their entirety that I have mentioned, I’m talking about the continued, repetitive failure to allow visitation and the interference referenced and the lack of good judgment, evidencing instability, all of these things together equate with a material change in circumstances .... ”
 

 ¶ 10. After finding that a material change in circumstances existed, the chancellor addressed and analyzed each
 
 Al-bright
 
 factor to determine if it was in Kristi’s best interest to modify the custody order.
 

 (a)Age, Health, and Sex of Child
 

 ¶ 11. The chancellor found that Kristi’s mental and physical health is normal. He then noted that she was a fourteen-year-old girl in the beginning of her teenage years. Therefore, the court determined that this factor slightly favored Sharon.
 

 (b) Continuity of Care
 

 ¶ 12. The court looked at the evidence to determine which parent had continuity of care prior to the separation. The court found that Sharon took care of all of the children before the separation because Gary worked to provide financial stability for the family. The court determined that this factor favored Sharon.
 

 (c) Parenting Skills
 

 ¶ 13. The court further determined that both parents were willing and able to provide primary childcare. However, the court stated its concern about Sharon’s parenting skills. The specific instances that concerned the chancellor were Sharon’s disallowing and interfering with Gary’s visitation and her leaving a threatening, intimidating letter for Kristi’s classmate. Hence, the court found that this factor favored Gary.
 

 (d) Employment and Responsibilities of Employment
 

 ¶ 14. The court noted that Gary was a physician with great responsibilities. The court also noted that, due to Sharon’s medical problems and a previous automobile accident, Sharon was disabled and unable to work. The court found this factor in Gary’s favor.
 

 (e) Physical Health, Mental Health, and Age of Parents
 

 ¶ 15. The court found Gary more physically and mentally able to conduct effective parenting. The court reached this conclusion as a result of its concern with Sharon’s mental health. Specifically, the court was concerned about Sharon’s mental stability and her lack of judgment. The court found this factor in favor of Gary.
 

 
 *119
 

 Cf) Emotional Ties of Parents and Child
 

 ¶ 16. The court found that this factor slightly favored Sharon, even though the court recognized that it was highly probable that Kristi was manipulated to have ill feelings toward her father.
 

 (g) Moral Fitness
 

 ¶ 17. The court found that this factor did not favor either parent.
 

 (h) Home, School, and Community Record
 

 ¶ 18. The court also determined this factor favored neither parent. However, the court noted that it considered Kristi’s negative school record when she was in the custody of her mother. The court pointed out that Kristi was not able to return to her school the following year because of Sharon’s action of leaving the threatening letter for one of Kristi’s schoolmates.
 

 (i) Child’s Preference
 

 ¶ 19. The court found that this factor slightly favored Sharon. Kristi did not personally testify whom she preferred to live with. However, the court took into consideration her brother’s testimony that Kristi wanted to remain with her mother.
 

 (j) Stability of the Home Environment
 

 ¶ 20. The court found that this factor strongly favored Gary. The court based this finding on the fact that Gary had remarried and had a stepdaughter at home close to Kristi’s age. The court further based this finding on the premise that Gary had maintained stable employment from which he could provide a more stable home and noted that as between Gary and Sharon, Gary was the only one to maintain full-time employment.
 

 ¶ 21. After reviewing the court’s conclusion with respect to each factor, we cannot say that the chancellor was manifestly wrong in modifying custody. Accordingly, this contention of error is without merit.
 

 2. Contempt
 

 ¶22. There are two forms of contempt: civil and criminal. “If the primary purpose of the contempt order is to enforce the rights of private party litigants or [to] enforce compliance with a court order, then the contempt is civil.”
 
 Dennis v. Dennis,
 
 824 So.2d 604, 608(¶8) (Miss.2002) (citing
 
 Purvis v. Purvis,
 
 657 So.2d 794, 796 (Miss.1994)). “The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act.”
 
 Id.
 
 In other words, the con-temnor “carries the keys of his prison in his own pocket.”
 
 Common Cause of Mississippi v. Smith,
 
 548 So.2d 412, 415 (Miss.1989) (quoting
 
 Gompers v. Buck’s Stove & Range Co.,
 
 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). On the other hand, criminal contempt penalties are designed to punish the defendant for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order.
 
 Id.
 
 at 415-16.
 

 ¶ 23. Criminal contempt matters are categorized either as direct or constructive.
 
 Dennis,
 
 824 So.2d at 608(¶ 10). Direct criminal contempt “involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice.”
 
 Id.
 
 at 608-09(¶ 10). Direct contempt may result in an immediate response by the judge in whose presence the conduct was committed.
 
 Id.
 
 at 609(¶ 10). Constructive criminal contempt involves conduct committed outside the presence of the court.
 
 Id.
 
 In
 
 *120
 
 constructive contempt matters, defendants are required to be given procedural due process safeguards, including a specification of charges, notice, and a hearing.
 
 Id.
 
 (citing
 
 Moulds v. Bradley,
 
 791 So.2d 220, 225(¶ 8) (Miss.2001)).
 

 ¶ 24. The standard of review varies with the type of contempt involved. Civil contempt matters are bound by the manifest-error rule.
 
 Purvis,
 
 657 So.2d at 797. However, in criminal contempt matters, the court proceeds ab initio to determine whether the record proves the alleged contemnor guilty of contempt beyond a reasonable doubt.
 
 Id. See
 
 Miss. Code Ann. § 11-51-11(4) (Rev.2002) (burden of proof for criminal contempt “shall be proof beyond a reasonable doubt”); Miss.Code Ann. § 11-51-12(4) (Rev.2002) (burden of proof in civil contempt “shall be proof by a preponderance of the evidence”).
 

 ¶ 25. Here, the court found Sharon in contempt for violating the visitation order and also for failing to provide Gary with an accounting of the children’s college funds. In regard to the visitation, the court ordered Sharon to serve sixty days with thirty days suspended for good behavior. This contempt is constructive criminal contempt, as the violation of the court’s order occurred outside the presence of the court, and the penalty imposed by the chancellor punished Sharon for disobeying the order of the court. Sharon’s punishment for interfering with Gary’s visitation rights was not conditioned upon her compliance with the visitation provisions of the court’s order.
 

 ¶ 26. Sharon alleges that the trial court erred in sentencing her to sixty days in jail, with thirty days suspended, without the benefit of counsel. First, she argues that the trial court erred in finding her in criminal contempt because the evidence presented did not establish her guilt beyond a reasonable doubt. Second, she argues that the trial court erred in incarcerating her for criminal contempt without the benefit of counsel, in violation of her constitutional rights, namely, the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution.
 

 ¶ 27. As mentioned above, in constructive criminal contempt matters, defendants are afforded certain procedural due process safeguards, namely: a specification of the charges, notice, and an opportunity to be heard.
 
 Dennis,
 
 824 So.2d at 609(¶ 10). Regarding the specification of the charges, Gary’s petition for contempt alleges that Sharon denied him visitation with Kristi.
 
 [2]
 
 Further, Sharon testified about the two visitation dates complained of in the petition for contempt. With respect to notice, Sharon admitted in court that she was personally served with the petition for contempt. Further, the clerk’s index also reflects that Sharon was personally served with the petition for contempt on November 16, 2006. Regarding the opportunity to be heard, Sharon was afforded a hearing on May 29, 2007. Therefore, we find that Sharon was afforded the procedural due process safeguards required in constructive criminal contempt matters. We next address her contention that she was denied her Sixth Amendment right to counsel.
 

 ¶ 28. As stated, the petition for contempt and the petition for modification were both filed on November 10, 2006. The record reflects that these petitions were served on Sharon on November 16, 2006. The record further reflects that an
 
 *121
 
 order for a continuance was entered on November 29, 2006. The order continued the hearing until May 29, 2007. At the hearing of the cause, which was held on May 29, the court stated that one of the reasons for the November 29 continuance was to allow Sharon an opportunity to obtain counsel. When she appeared for the May 29 hearing, she still did not have counsel. She requested that the hearing be continued not because she needed time to obtain counsel, but because medically, she was unable to proceed. At no time did she request a continuance to allow her additional time to retain an attorney. As support of her contention that she could not proceed because of her medical condition, she presented a letter from Dr. Carla C. Hewitt who stated that she had treated Sharon for “passing out episodes” and that in her opinion Sharon “needs to have time for her current medical problems to be resolved before continuing in any intensive legal situation, such as court appearances, if at all possible.” The court overruled Sharon’s ore tenus motion and proceeded with the hearing.
 

 ¶ 29. Although due process entitles parties to have counsel in constructive criminal contempt proceedings, the court cannot allow parties to abuse this entitlement. If parties were allowed to continue cases indefinitely by showing up to court "without counsel, even though the court had given the party an opportunity to obtain counsel, court dockets would become severely backed up. In fact, some parties might even purposefully fail to obtain counsel in order to prevent their trials from ever occurring. Based on the facts of this case, we find that Sharon was not denied her right to counsel, as the court granted her six months in which to secure counsel.
 
 [3]
 
 This issue is without merit.
 

 ¶ 30. Sharon next argues that the evidence was insufficient to sustain her conviction of criminal contempt. We address the sufficiency of the evidence as to both the criminal and civil contempt at the same time. Therefore, we delay that discussion until after a brief analysis of the court’s order, as the order did not differentiate between the types of contempt.
 

 ¶ 31. As stated, the court also found Sharon in contempt for failing to provide the accounting regarding the children’s college funds and ordered her to remain in jail after serving the first thirty days if by then she had not provided Gary with the accounting. This contempt is civil, as Sharon’s continued jail time depended upon her independent decision to comply with the court’s order to provide the accounting.
 

 ¶ 32. We now look at the evidence supporting both the criminal and civil contempt charges, addressing first the evidence with respect to the criminal contempt. When considering the sufficiency of evidence, we must decide whether, after viewing the evidence in the light most favorable to the party who has the burden of proof, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 Morris v. State,
 
 927 So.2d 744, 748(¶ 15) (Miss.2006).
 

 ¶ 33. Sharon argues that the evidence is insufficient to sustain her conviction of constructive criminal contempt beyond a reasonable doubt because, on this issue, the evidence is disputed. There is no dispute that Sharon failed to comply with the visitation order, as she admitted
 
 *122
 
 as much and offered several explanations of why she failed to comply. As to her actions regarding the accounting, Sharon could not testify with certainty that the accounting was ever filed with the chancery clerk as ordered by the court. While, as Sharon contends, some of the facts un-dergirding the contempt charges were disputed, we cannot say that any rational trier of fact could not have found Sharon in criminal contempt for failing to allow visitation and in civil contempt for failing to provide the accounting. This issue is also without merit. Consequently, we affirm the chancellor’s judgment in all respects.
 

 ¶ 34. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Gary sought a change of custody of the parties sole remaining minor child, Kristi.
 

 [2]
 

 . Sharon did not designate a copy of the petition of contempt for this appeal. Our statement regarding the content of the petition are taken from Gary's trial testimony.
 

 [3]
 

 . Sharon does not contend that she is indigent and was entitled to have counsel appointed to represent her because of her indigence, nor did she make any such claim before the chancery court. Therefore, the court was not required to sua sponte appoint counsel for her.