BARNES, J.,
for the Court:
¶ 1. Elizabeth Jane Janssen (E.Jane) filed for divorce from her husband, Gregory Eugene Janssen (Greg) on August 4, 2000. Six years later, the Chancery Court of the First Judicial District of Harrison County entered a judgment of divorce and a division of marital assets. At issue in this appeal is an award of family heirlooms to E. Jane that allegedly were in the marital home where Greg still resided. After E. Jane’s attempts to procure the items were unsuccessful, E. Jane filed a citation for contempt against Greg on September 26, 2007. The chancery court ordered Greg to allow E. Jane access to the home to collect the items; however, when she went to the home, E. Jane could not locate the items. She filed another citation for contempt, and the chancellor found Greg to be in contempt of the court’s original orders and imposed thirty days of incarceration. The chancery court’s judgment *26 also awarded E. Jane the replacement value of the items and attorneys’ fees. After reviewing Greg’s appeal of the chancellor’s judgment, we find no abuse of discretion by the chancellor and affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. E. Jane and Greg were married in 1981 and lived in Gulfport, Mississippi. The couple separated in 2000. E. Jane filed a complaint for divorce with the Harrison County Chancery Court on August 4, 2000. The couple briefly reconciled but separated permanently in 2003. E. Jane moved from the marital home with the couple’s minor teenage daughter, Erica. The couple have another child, a son, who is emancipated.
¶ 3. As no further action had been taken on E. Jane’s initial complaint for divorce, the Harrison County Chancery Clerk issued a motion to dismiss for want of prosecution on August 25, 2003. E. Jane filed an amended divorce complaint on March 2, 2004. In June 2005, Greg suffered a stroke, and in August 2005, Hurricane Katrina damaged the marital home.
¶ 4. On February 15, 2006, the chancery court granted the parties a divorce on the ground of irreconcilable differences. The chancellor awarded the marital home to Greg, and the couple’s farm in Perry County, Mississippi, was awarded to E. Jane. Pertinent to the issue on appeal, the chancellor also awarded E. Jane some personal family heirlooms that were still in the marital home. In the order, the chancellor noted that “Greg had no objection to [E. Jane] taking as hers those items that were Walker heirlooms, although there was no description of such items.”
¶ 5. On September 26, 2007, E. Jane filed a citation of contempt against Greg, claiming that he had violated the court’s order by not allowing her access to the marital home to collect her personal items and heirlooms. In a letter to Greg’s attorney dated January 16, 2008, E. Jane requested a date that she could “pick up her items from the house and the sooner the better.” Greg denied that E. Jane was not given access to the home and stated that he no longer possessed some of the items. E. Jane filed a second citation for contempt on March 6, 2009.
¶ 6. After a hearing, the chancery court entered a judgment of contempt against Greg on September 25, 2009, and ordered him to allow E. Jane access to home to retrieve the heirlooms. The chancellor also awarded E. Jane $1,000 for attorneys’ fees. The parties agreed that E. Jane would be allowed to enter the home on December 5, 2009, to retrieve the items at issue. However, when she was unable to locate the family heirlooms at the home, E. Jane filed a third citation of contempt on December 11, 2009, claiming that Greg had “destroyed, thrown away, and secreted away from her” the items. E. Jane sought incarceration of Greg for his contempt and requested reimbursement of the value of the personal property and attorneys’ fees.
¶ 7. Another hearing was held on April 23, 2010, and for the first time since the start of the proceedings, Greg testified that the items likely were destroyed in Hurricane Katrina. On May 25, 2010, the chancery court entered its judgment, finding that Greg’s deliberate conduct of preventing E. Jane from retrieving her items constituted contempt of the court’s previous judgments. The chancellor ordered Greg to be incarcerated for thirty days. E. Jane was awarded attorneys’ fees of $5,761.56 and replacement value of the items ($9,748.98), if they were not received within ten days from the entry of the judgment.
*27 ¶ 8. On appeal, we find that the chancellor did not abuse his discretion in finding Greg in contempt and in awarding damages and attorney’s fees. We affirm the judgment.
STANDARD OF REVIEW
¶ 9. Our review of a chancellor’s decision is limited. Pulliam v. Bowen, 54 So.3d 331, 334 (¶ 10) (Miss.Ct.App.2011) (citing Nichols v. Funderburk, 883 So.2d 554, 556 (¶ 7) (Miss.2004)). We will only reverse if “[t]he chancellor’s determinations ... were manifestly wrong, clearly erroneous, or when the chancellor applies an incorrect legal standard.” Id. A chancellor’s decision is reviewed for abuse of discretion; questions of law, however, are reviewed de novo. Tillman v. Mitchell, 73 So.3d 556, 558 (¶ 8) (Miss.Ct.App.2011) (citations omitted).
I. Whether the chancellor abused his discretion in finding that Greg was in contempt.
¶ 10. In his May 25, 2010 order, the chancellor found Greg in contempt for his attempts to prevent E. Jane from obtaining certain personal family heirlooms, and Greg was incarcerated for thirty days “for his willful and contumacious contempt of the Court’s judgment.” The chancellor stated: “Greg’s testimony does not square with the correspondence sent on his behalf. ... This Court finds that he has engaged in a course of conduct designed to thwart [E. Jane] Janssen’s retrieval of her personal property and family heirlooms.”
¶ 11. Whether to hold a party in contempt is subject to the discretion of the chancellor. Kelley v. Day, 965 So.2d 749, 756 (¶ 18) (Miss.Ct.App.2007) (quoting R.K. v. J.K., 946 So.2d 764, 777 (¶ 39) (Miss.2007)). “Contempt is an issue of fact to be decided on a case-by-case basis.” Id. The “[f]ailure to comply with a court order is prima facie evidence of contempt.” Evans v. Evans, 75 So.3d 1083, 1087 (¶ 14) (Miss.Ct.App.2011) (citing McIntosh v. Dep’t of Human Servs., 886 So.2d 721, 724 (¶ 11) (Miss.2004)). In order “[t]o rebut a prima facie case of contempt, a defendant must show ... ‘that performance was impossible.’” Id. (citation omitted). Greg argues that the chancellor abused his discretion by finding that Greg was in contempt as he did not possess the items at issue. Thus, Greg claims that he “did not comply because he could not comply.”
¶ 12. As both parties note on appeal, the chancellor charged Greg with constructive criminal contempt. Criminal contempt punishes “for disobedience of a court order ... and does not terminate upon compliance with the court order.” In re Williamson v. Miller, 838 So.2d 226, 237 (¶ 29) (Miss.2002) (citing Common Cause of Miss. v. Smith, 548 So.2d 412, 415-16 (Miss.1989)). A finding of constructive criminal contempt “punishes a party for noncompliant conduct outside the court’s presence.” Hanshaw v. Hanshaw, 55 So.3d 143, 147 (¶ 14) (Miss.2011) (citing Moulds v. Bradley, 791 So.2d 220, 224-25 (¶ 8) (Miss.2001)). Here, the term of incarceration was for a definite period of time and was punishment for Greg’s noncompliance with the court’s order. “[I]n criminal contempt matters, the court proceeds ab initio to determine whether the record proves the alleged contemnor guilty of contempt beyond a reasonable doubt.” Davis v. Davis, 17 So.3d 114, 120 (¶ 24) (Miss.Ct.App.2009) (citation omitted). “In constructive contempt matters, defendants are required to be given procedural due process safeguards, including a specification of charges, notice, and a hearing. Id. at 199-20 (¶ 23) (citation omitted).
¶ 13. At the hearing for the divorce and division of assets, Greg stated:
*28 Q. Now, the heirlooms that’s in your home that came from the Walker family, do you want her to have them?
[[Image here]]
A. Yes.
[[Image here]]
Q. You have no objection to her picking them up whenever it’s convenience for her and yourself?
A. Yeah.
Q. Without any interference from you?
A. I can’t get into the attic.
Q. I’m sorry?
A. I can’t get into the attic. If she’s got anything up there, I can’t get to it.
In the February 15, 2006 order granting the divorce and equitable distribution of marital assets, the chancery court noted that “Greg had no objection to E. Jane taking as hers those items that were Walker heirlooms, although there was no description of those items.” The chancellor also concluded that Greg’s testimony was unreliable and not trustworthy, as Greg’s stroke caused confusion with memory and numbers.
¶ 14. On November 14, 2006, E. Jane sent Greg a list of personal items to be divided, which included items in the attic such as the “Marsh/Walker furniture and accessories.” E. Jane filed the citation for contempt on September 26, 2007, and sent an informal request to obtain a date to retrieve her items; Greg waited until August 20, 2008, to respond. In his response, he claimed that he “does not have some of the items that Petitioner requested, and Petitioner has had the opportunity to get the rest of the items.” At a hearing on May 11, 2009, Greg testified that E. Jane came to the home once, and the attic was “nailed shut,” presumably for safety reasons. When questioned, whether there was anything left on “E. Jane’s list” in the home after Hurricane Katrina, Greg merely stated, “Nothing.” However, E. Jane disputed that any damage to the attic was a result of Katrina, and she claimed that she was unable to look for the items.
Q. And every time that you were supposed to be authorized to go pick up your property, even after August of 2008, have your been permitted to do so?
A. No, I have not.
Q. Now, what prevented you from going to do it?
A. There was no one there at all, and no one answered the door. There were no vehicles there.
Furthermore, as the chancellor noted at the hearing, the judgment awarding the items was entered “post-Katrina.” Yet, Greg said nothing about the unavailability of the items in 2006.
¶ 15. Greg was given a hearing on April 23, 2010, to address the December 11, 2009 citation for contempt. It was not until this hearing that Greg claimed that the family heirlooms either were destroyed in Hurricane Katrina or lost in the subsequent clean-up. This was four years after he was ordered by the chancery court to provide E. Jane with the items. Further, Erica testified that she saw the items in 2007 when she went to the home to retrieve some of her personal belongings. E. Jane also stated that the items were there after Hurricane Katrina.
¶ 16. We find that the evidence showed, beyond a reasonable doubt, that Greg was not forthcoming with information regarding the status of the pertinent items during the entire course of the proceedings and that he was not cooperative in allowing E. Jane access to the items. Although E. Jane was awarded the heirlooms in 2006, she was unable to access the attic to *29 search for the items until December 5, 2009. It was only at that point it became evident that the items were missing.
¶ 17. Accordingly, we find no abuse of discretion in the chancellor’s finding of contempt.
II. Whether the award of attorneys’ fees was excessive.
¶ 18. Greg contends that the award of attorneys’ fees in the May 25, 2010 order was excessive, since it was for E. Jane’s attorneys’ fees since 2007. The award of attorneys’ fees is “generally proper” if a party “is found in contempt of a previous judgment!.]” Day v. Day, 28 So.3d 672, 677 (¶ 23) (Miss.Ct.App.2010) (citing Newell v. Hinton, 556 So.2d 1037, 1043 (Miss.1990)). “[T]he purpose of an award of attorney’s fees is to compensate the prevailing party for losses sustained by reason of a defendant’s noncompliance with the judicial decree.” Jurney v. Jurney, 921 So.2d 372, 376 (¶ 14) (Miss.Ct.App.2005) (citing Hinds County Bd. of Supervisors v. Common Cause of Miss., 551 So.2d 107, 125 (Miss.1989)). “[W]here a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party.” Corporate Mgmt., Inc. v. Greene County, 23 So.3d 454, 466 (¶ 34) (Miss.2009) (quoting Mabus v. Mabus, 910 So.2d 486, 489 (¶ 8) (Miss.2005)).
¶ 19. It does appear from the record that the attorneys’ fees awarded were for all charges incurred throughout the entire contempt proceedings, less the $1,000 already awarded in the September 2009 order. However, the fee statement was admitted into evidence at the April 23, 2010 hearing without any objection from Greg. While Greg’s attorney reserved the right to “voir dire” E. Jane’s attorney regarding the fee statement, he never did so. Therefore, we find that Greg has waived this issue on appeal. See Common v. Common, 42 So.3d 59, 62 (¶ 7) (Miss.Ct.App.2010).
¶ 20. Nonetheless, there was nothing to indicate that any of the attorneys’ fees were for any work unrelated to the contempt proceedings and the retrieval of these items. Furthermore, although Greg asserts that E. Jane provided no testimony that she was unable to pay the fees, this Court has held that “[a] specific finding of inability to pay is also not required when attorneys’ fees are assessed against a party found to be in contempt.” Dickerson v. Dickerson, 34 So.3d 637, 649 (¶ 50) (Miss.Ct.App.2010) (citing Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993)). We find no error in the award of attorneys’ fees to E. Jane.
III. Whether the award for replacement value was supported by credible evidence.
¶ 21. Greg contends that he paid E. Jane $18,500 under an agreed order (which was not presented to the chancery court until December 21, 2009) and that he was under the belief that this payment resolved all pending issues. Thus, he argues that she had no right to continue to “come after [him] for contempt over these items.” He further claims that the items “had only emotional value.”
¶ 22. Yet, in his Appellant’s brief, Greg admits that he “believed that the Agreed Order and lump sum payment resolved all pending contested issues; however, the retrieval of the remaining personal property that had yet to be identified and agreed upon by the parties remained outstanding according to the terms of the Agreed Order.” (Emphasis added).
¶23. At the May 11, 2009, and April 23, 2010 hearings, E. Jane submitted *30 into evidence a list of the missing items with their respective values. At both hearings, Greg’s counsel objected to the evidence, arguing that no independent value of the items had been offered. However, “a party may testify as to the value of his or her own property.” Community Bank, Ellisville, Miss. v. Courtney, 884 So.2d 767, 774 (¶ 23) (Miss.2004) (citing Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 101 (Miss.1996)). “We have not indicated whether this estimate of value must be rationally based. Nor have we required any predicate other than that of ownership.” Id. at 774-75. At the May 2009 hearing, E. Jane testified:
Q. Have you looked at all the sources and then arrived on the value of the property on your own judgment, not relying on something else?
A. Yes, sir.
Q. And this is what you have come to believe and tell the court under your oath that your best interest, the value of that property would be at the time that you were entitled to it?
A. Yes, sir, that’s correct.
¶ 24. Additionally, Greg did not provide any evidence to controvert the value of the items. As this Court recently held:
The chancellors of this state are not responsible for the evidence that is presented at trial.[I]t is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried. Where a party fails to provide information, the chancellor is entitled to proceed on the best information available.
Cox v. Cox, 61 So.3d 927, 937-38 (¶ 32) (Miss.Ct.App.2011) (quoting Irby v. Estate of Irby, 7 So.3d 223, 225 (¶ 38) (Miss.2009)).
¶ 25. Accordingly, we find that there was credible evidence to support the award of replacement value for the missing items. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.