JAMES, J., for the Court:
¶ 1. The Harrison County Chancery Court granted Yolanda Roberts a fault-based divorce from Christopher Roberts on the grounds of uncondoned adultery. The chancellor made an equitable division of the marital property and awarded Yolanda $500 per month in periodic alimony. Christopher appeals the judgment, raising the following issues:
I. The chancellor erred in awarding Yolanda Roberts the sum of $50,000.00 with 8% interest from Christopher Roberts, representing one-half of the funds used by Mr. Roberts to start a business, and erred in awarding Yolanda Roberts the sum of $18, 877.83, representing one-half of the Christopher Robert’s E-Trade account, and awarding her the sum of $1,100.00, representing one-half of the IRA Franklin Money Account.
II. The [cjhancellor erred in awarding Yolanda Roberts [periodic] alimony in the amount of $500.00 per month when Christopher Roberts was unemployed, among other factors.
III. The [c]hancellor erred in finding Christopher Roberts in contempt and ordering him to pay $1,852.85 to Yolanda Roberts for their son’s college living expenses, [and] by not considering payments made by Christopher Roberts directly to the child for this purpose.
Finding no error, we affirm the judgment of the chancery court.
FACTS
¶ 2. Christopher and Yolanda were married on April 23, 1985, and separated *938 on August 14, 2007. Two children were born of the marriage, Price J. Roberts, born December 27, 1987, and Lauren R. Roberts, born February 3,1988.
¶ 3. During the marriage, Christopher was employed as an off-shore installation manager and certified diver with Phoenix International. Christopher was also involved in an informal partnership with his friend, Mark Drake, in which they bought, renovated, and resold houses. This partnership venture was created upon Christopher and Drake each contributing $100,000. Yolanda worked as a part-time PRN nurse. On January 24, 2008, Yolanda filed her complaint for divorce on the ground of uncondoned adultery. On May 2, 2008, an agreed temporary judgment was entered into by the parties. The agreed temporary order provided, in part, as follows: the parties were each to pay one-half of the college room, board, and tuition for their son, Price; Yolanda was awarded temporary use and possession of the marital residence located in Gulfport, Mississippi, including all household goods, appliances, furniture, and fixtures; and Christopher was to pay temporary spousal support to Yolanda of $1,000 per month, beginning March 25, 2008, and continuing until further order of the court.
¶ 4. On October 1, 2008, the chancellor entered a judgment of divorce on the ground of uncondoned adultery, reserving jurisdiction over the parties in order to hear and rule on all other matters at a later date.
¶ 5. Yolanda filed a complaint for contempt on September 23, 2009, alleging that Christopher had failed to comply with the May 2, 2008 agreed temporary judgment. A trial regarding the remaining issues of equitable division of marital property and contempt was held August 13, 2009, January 28, 2010, May 19, 2010, September 9, 2010, and February 28, 2011.
¶ 6. On February 28, 2011, Christopher filed a motion to terminate temporary spousal-support payments. In support of his motion, Christopher attached a letter from Phoenix International showing that his employment position was terminated on October 19, 2010. By order entered March 2, 2011, all temporary spousal-support payments were abated until the entry of a final judgment. On March 2, 2012, the chancellor entered a final judgment in which he made a final ruling on all outstanding issues, including the division of marital property, award of alimony, and Yolanda’s motion for contempt.
¶ 7. The chancellor found Christopher in contempt for his failure to pay his portion of Price’s reasonable living expenses for the months of March, April, and May 2009, and ordered Christopher to pay Yolanda $1,852.85.[1] The chancellor made a determination of marital and nonmarital property and equitably divided the marital property. As to real property, Yolanda was awarded the marital home located in Gulfport. The marital home was appraised at $120,000. At the time of the trial, Christopher resided at a house in Long Beach, Mississippi, a property appraised at $106,000. The chancellor awarded this property to Christopher. *939 The chancellor identified one other property in Gulfport, as being marital. As no appraisal was conducted on this property, the chancellor ordered the parcel sold and the proceeds divided equally among the parties. The chancellor found all other properties in which Christopher had an interest to be the separate property of Christopher.[2]
¶ 8. In addition to real property, Christopher’s Franklin Money IRA account and E-Trade account were found by the chancellor to be marital property. Accordingly, the chancellor awarded Yolanda $1,100, representing her one-half interest in the IRA account and $18,877.88, representing her one-half interest in the E-Trade account. The chancellor also ordered Christopher to pay Yolanda $50,000, representing one-half of the funds that he used to start his business with Drake. Finally, the chancellor awarded Yolanda periodic alimony of $500 per month, beginning March 1, 2012.
¶ 9. Christopher filed a motion for a new trial or, in the alternative, for reconsideration. Likewise, Yolanda filed a motion for reconsideration, or to amend or alter the judgment. Both motions were denied. Christopher now appeals.
DISCUSSION
¶ 10. We will not reverse a chancellor’s decision unless the chancellor’s findings were clearly erroneous or manifestly wrong, or the chancellor applied an incorrect legal standard. Byrd v. Byrd, 100 So.3d 443, 447 (¶ 5) (Miss.2012). “The chancellor’s ruling will be upheld if supported by substantial credible evidence.” Id.
I. Whether the chancellor erred in the distribution of the marital assets.
¶ 11. Christopher characterizes the chancellor’s judgment dividing the marital property as “wholly inequitable.” Yolanda was awarded the marital residence, valued at $120,000, while Christopher was awarded the Long Beach property, valued at $106,000. Christopher maintains that while Yolanda received one hundred percent of the equity in the marital residence, he only received fifty percent of the equity in the Long Beach property because the property was jointly owned by Drake. Thus, while Yolanda received a value of $120,000, Christopher only received a value of $53,000, a difference of $67,000. Christopher further asserts that the chancellor erred in awarding Yolanda $50,000, representing one-half of the marital funds Christopher used to start his partnership with Drake, while failing to divide or consider $50,000 in Certificates of Deposit (“CDs”) in Yolanda’s possession.
¶ 12. In sum, Christopher argues that the chancellor’s findings were unfair in that Yolanda received the majority of the marital assets, with no showing that she made a larger contribution to the accumulation of marital assets. We disagree.
¶ 13. We first note that “equitable distribution does not mean equal distribution.” Brabham v. Brabham, 950 So.2d 1098, 1100 (¶ 7) (Miss.Ct.App.2007) (citing Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994)). The Mississippi Supreme Court’s decision in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), sets forth the framework for property designation and distribution. In light of that decision and *940 its progeny, when dividing marital property, “chancellors are directed to (1) classify the parties’ assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in Ferguson; and (4) consider the appropriateness of alimony if either party is left with a deficiency.” Dickerson v. Dickerson, 34 So.3d 637, 643-44 (¶ 23) (Miss.Ct.App.2010). The Ferguson factors include:
(1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.
Id. at 644 (¶ 23) (citing Hults v. Hults, 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App. 2009)). Furthermore, “in applying the Ferguson factors, chancellors should consider each party’s marital fault.” Id.
¶ 14. Here, the chancellor first characterized each asset as marital or nonmarital using the factors set forth in Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994), then equitably divided it using the Ferguson factors. The chancellor identified three parcels of real property as being marital property: the marital residence; the Long Beach home; and a third property located on Pass Road in Gulfport.[3] The chancellor awarded Yolanda the marital residence and Christopher the Long Beach property. No testimony was received regarding the value of the Pass Road property; thus, the chancellor ordered that the property be sold and the proceeds divided equally between the parties.
¶ 15. The chancellor found that Yolanda had no retirement accounts. Yolanda did have $50,000 in CDs, which the chancellor found to be her separate property. Christopher testified to possessing two retirement accounts: a 401(k) account and an IRA account. Christopher testified that during the pendency of these matters, he withdrew all funds from the IRA account, which totaled $2,200, and gave none of these funds to Yolanda. Christopher further testified that the 401(k) account contained over $90,000, which Christopher converted to E-Trade accounts. The chancellor found both accounts to be marital property subject to equitable distribution and awarded Yolanda $1,100, representing her one-half share of the IRA and $18,877.83, representing her one-half share of the present value of the E-Trade account.
¶ 16. As to the $100,000 that Christopher used to begin his partnership with Drake, the chancellor found that the funds were drawn during the marriage and prior to the separation of the parties, and were therefore marital funds subject to distribution. The chancellor further noted that *941 “the record shows and supports this [e]ourt’s finding that Christopher set about on a frolic of his own utilizing marital funds he secreted from Yolanda for non-marital purposes.” Accordingly, the chancellor ordered Christopher to pay Yolanda $50,000, representing her one-half interest.
¶ 17. Christopher’s argument that the division was not equitable fails to take into account Christopher’s separate assets not subject to distribution. Although the chancellor found that the funds Christopher used to start his partnership with Drake were marital, the chancellor noted that “the record makes it impossible for this court to go through each [partnership] property and determine what part, if any, constitutes martial property.” Thus, the chancellor found the eight additional partnership properties to be the separate property of Christopher; thus, Christopher retained his fifty percent interest in each property.
¶ 18. As we note above, chancellors need not divide the marital estate equally when ordering equitable division. To the contrary, “an unequal division may be appropriate under certain circumstances.” Id. After reviewing the record and the chancellor’s findings, we find that the chancellor acted well within his discretion in applying the Ferguson factors and distributing the marital property. Accordingly, we find this issue to be without merit.
II. Whether the chancellor erred in awarding Yolanda periodic alimony.
¶ 19. The Mississippi Supreme Court, in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), set forth the factors to be used to determine whether a spouse is entitled to alimony. These factors include:
1. The parties’ expenses and income;
2. The parties earning capacity and health; <N
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties; l>
8. The standard of living of the parties, both during the marriage and at the time of the support determination; OO
9. The tax consequences of the spousal order; CO
10. Fault or misconduct; O T — 1
11. Wasteful dissipation of het assets by either party; and 1-H T — \
12. Any other factor deemed by the court to be just and equitable in connection with the spousal support. to
[[Image here]]
¶ 20. The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.” Elliott v. Elliott, 11 So.3d 784, 786 (¶ 8) (Miss.Ct.App.2009). Thus, “permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets.” Id.
¶ 21. Christopher argues that the chancellor erred in awarding Yolanda periodic alimony of $500 per month. Christopher asserts that the chancellor failed to consider Christopher’s ability to pay in light of the fact that Christopher lost his employment position with Phoenix International. Christopher further asserts that the award was unjust considering the division of mar *942 ital property, in that Yolanda received a greater portion of the marital estate. In sum, Christopher argues that the chancellor was required to consider Christopher’s ability to pay alimony as well as the totality of the circumstances as to the property-division award, and failed to do so. We disagree.
¶ 22. In turning to the chancellor’s decision, we note that the chancellor made extensive findings regarding periodic alimony in applying the factors set forth in Armstrong. The chancellor found that, prior to losing his employment position with Phoenix International, Christopher earned approximately $11,335 per month and listed his monthly living expenses as $2,177.57. The chancellor noted that, although Christopher lost his position with Phoenix International, his skill as an underwater diver “is a valuable and marketable asset which he has not pursued as he could have to obtain employment.” The chancellor found that Yolanda worked as a part-time PRN nurse and, at the time of the trial, had experienced a drop in income from $2,177.57 to $962.02 per month. Yolanda listed her monthly expenses as $2,267.70. The chancellor noted that Yolanda attributed this drop in income to the hospital no longer utilizing as many PRNs and her obligations as caregiver to her elderly father. In addressing the parties’ standard of living, both during the marriage and at the time of the support determination, the chancellor found that the during the marriage, Christopher’s monthly income was approximately $11,000 and Yolanda earned money from part-time work. The chancellor found that the parties “enjoyed an upper middle class standard of living during the marriage.” At the time of the determination, Christopher was drawing an unknown amount of unemployment benefits in addition to receiving income from his business with Drake, and Yolanda was working less than previously due to obligations to her elderly father. The chancellor found that an award of periodic alimony would be considered taxable income for Yolanda and a tax deduction for Christopher. As to fault, the chancellor found that the cause of the separation and ultimate divorce was Christopher’s admitted adultery with Melissa Ortega. Christopher further testified that his extramarital affair with Ortega was not his first. Finally, the chancellor found wasteful dissipation of assets by Christopher in the amount of $12,000, which he spent on trips with, and gifts for, Ortega.
¶ 23. We find that the chancellor’s Armstrong analysis was properly conducted. The chancellor considered each factor in detail and awarded Yolanda $500 per month in alimony. Accordingly, we find that the chancellor acted within his discretion. This issue is without merit.
III. Whether the chancellor erred in finding Christopher in contempt.
¶ 24. Finally, Christopher asserts that the chancellor erred in finding him in contempt and ordering him to pay Yolanda $1,852.85, representing one-half of Price’s living expenses for the months of March, April, and May 2009. In support of his assertion, Christopher alleges that during the months in question, he paid $650 per month directly to Price, and that Yolanda could not refute that these payments were made.
¶ 25. In March 2009, Price moved from an apartment where the monthly rent was $500 to an apartment with a monthly rent of $900. Yolanda testified and presented evidence that she paid all of Price’s living expenses during the three-month period, for a total of $4,905.70. Christopher testified that during that period, he gave $650 a month directly to Price. However, Christopher offered no documentation *943 demonstrating these payments. The chancellor found Christopher in contempt for his failure to pay his portion of Price’s room and board. However, citing a lack of justification for Price’s move to a more expensive apartment, the chancellor found that Christopher should not have to pay the difference in the increased rent. Thus, Christopher was ordered to pay $1,852.85, rather than $2,452.85.
¶ 26. “Whether to hold a party in contempt is subject to the discretion of the chancellor.” Janssen v. Janssen, 96 So.3d 23, 27 (¶ 11) (Miss.Ct.App.2012). Furthermore, “contempt is an issue of fact to be decided on a case-by-case basis.” Id. And “failure to comply with a court order is prima facie evidence of contempt.” Id.
¶27. Upon reviewing the record and testimony of the proceedings below, we find that the chancellor acted within his discretion in finding Christopher in contempt. Yolanda made a prima facie showing that Christopher failed to comply with the agreed order, and Christopher failed to satisfactorily rebut that showing. Accordingly, this issue is without merit.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR.

. In her motion for contempt, Yolanda alleged that Christopher did not comply with the agreed temporary judgment because he failed to pay the following: temporary support of $1,500; increased rent on Price’s apartment in the sum of $2,452.85 during the months of March, April, and May 2009; $500 in food costs incurred by Lauren during college and Lauren’s $75 honor-roll fee; and one-half of the medical expenses incurred by the children not covered by insurance. However, it is only the chancellor's ruling as to Christopher’s failure to pay his portion of Price’s living expenses that is before us on appeal.

. Eight additional properties were at issue; however, the chancellor found these properties to be exclusively partnership properties.

. The chancellor also identified a fourth property, located on Mill Road in Gulfport, as marital property. According to Christopher's testimony, the Mill Road property was purchased after the former marital home was damaged following Hurricane Georges in 1998. The property was used as the marital home for approximately six years and was sold in March 2007 for $500,000. The chancellor found that testimony regarding the sale of the property indicated a discrepancy regarding the sale price and the distribution of the proceeds between the parties. The chancellor noted that "the sum of the discrepancy is $100,000 .... Testimony clearly indicates that the sum of $100,000 was ‘kicked back’ but the record is not clear to whom the money was given.” However, apart from identifying the property as marital property and noting the discrepancy, the chancellor made no awards regarding this property.