# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01146-COA

SHANNA BLAKLEY HAYES                                         APPELLANT

v.

JEREMY HAYES                                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/19/2017 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE JR. |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RONALD W. LEWIS |
| | DANA LEIGH BUMGARDNER |
| ATTORNEYS FOR APPELLEE: | SHERRY L. LOWE |
| | THOMAS T. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 05/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Jeremy Hayes and Shanna Blakley Hayes were divorced in 2015. Following a series of hearings regarding modification of custody and contempt, the Wayne County Chancery Court awarded Jeremy primary physical custody of his and Shanna's daughter, K.H.[1] The chancery court also found Shanna in civil and constructive criminal contempt and sentenced her to incarceration in the Wayne County Jail and to pay fines; however, the court suspended execution of the sentence on the condition that Shanna not violate its order. Shanna filed a motion to amend or correct the trial court's findings of fact and conclusions of law, which

---

[1] We use initials to protect the identity of the minor child.

the trial court denied. Shanna appeals. After review of the record, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. Jeremy and Shanna were married in February 2013. Their daughter, K.H., was born in August 2013. Shanna filed for a divorce on fault grounds with an alternative request for a divorce for irreconcilable differences on October 28, 2014. In November 2014, Shanna filed a motion for temporary relief. Jeremy filed a motion to determine custody in February 2015. Shanna answered in April 2015. In October 2015, the parties filed a joint motion for the court to enter a judgment of divorce on the ground of irreconcilable differences and for the court to decide certain issues. On December 2, 2015, the court entered the judgment of divorce. The final judgment of divorce indicated that Jeremy had standard visitation and that Jeremy was to pay Shanna $668 per month in child support. Jeremy was also responsible for K.H.'s medical costs not covered by health insurance, $59.50 per week for child care, and $6,500 for Shanna's attorney's fees. The attorney's fees were to be paid at a monthly rate of $150.

¶3. On December 3, 2015, Jeremy filed a motion to reconsider and requested specific findings of fact and conclusions of law. On December 14, 2015, Jeremy filed an amended motion for citation of contempt and a notice of emergency hearing. Jeremy alleged that Shanna refused some visitations and that she posted negative things about him on social media. Jeremy asked the trial court to modify primary physical custody of K.H. to him and requested that law enforcement be allowed to assist him with visitation. On December 15, 2015, the trial court entered an order allowing an officer to be present during the times

2

Jeremy and Shanna exchanged K.H. The trial court also enjoined Shanna from making negative posts about Jeremy on her social media pages.

¶4. On January 5, 2016, Shanna filed a motion for citation of contempt and requested specific findings of fact and conclusions of law from the final judgment of divorce. Shanna alleged that Jeremy was not in compliance with his obligations for daycare payments or reimbursement of attorney's fees. As a result, Shanna requested an order for civil contempt and punitive damages. On February 2, 2016, Shanna filed her second petition for a citation of contempt, alleging that Jeremy had not paid for daycare or her attorney's fees as ordered in the final judgment of divorce. On February 18, 2016, a letter from the chancellor clarified the obligations for daycare payments and overruled Jeremy's motion filed in December 2015.

¶5. Also on February 18, 2016, Shanna filed for a preliminary injunction, alleging that Jeremy did not properly administer K.H.'s medication when she visited him. Shanna also alleged that Jeremy had been physically abusive to K.H. Shanna reported her allegations of sexual abuse to the Mississippi Department of Human Services (DHS). In the claim, she requested that K.H.'s visitation with Jeremy either cease or be restricted. She also requested that Jeremy pay her attorney's fees. Finally, Shanna alleged that Jeremy refused to communicate with her regarding K.H.

¶6. On February 23, 2016, Jeremy filed a motion to dismiss and a motion for sanctions. Jeremy requested that the trial court dismiss Shanna's motion for a preliminary injunction and her petition for contempt. In the motion for sanctions, Jeremy alleged that Shanna had filed frivolous charges against him and refused some of K.H.'s visits with him. Also on that

3

date, the trial court entered an order granting joint legal custody to the parties and continued the other claims to an alternative date.

¶7.     On February 29, 2016, Shanna filed a response and defenses to Jeremy's motion to dismiss and motion for sanctions, essentially denying all allegations. In that document, Shanna admitted that she reported Jeremy to DHS and had denied Jeremy visitation; however, she maintained that Jeremy would not communicate with her regarding K.H.

¶8.     On March 1, 2016, Jeremy filed a motion for a psychological exam for Shanna, alleging that she exhibited wild and erratic behavior. On March 21, 2016, Shanna filed a motion for a psychological evaluation for Jeremy.

¶9.     On April 5, 2016, Jeremy filed another motion for citation of contempt and motion to modify custody alleging that Shanna again refused visitation for K.H. to visit Jeremy. On April 14, 2016, Jeremy once again filed a complaint for citation of contempt and a motion for emergency modification of custody. In this complaint, Jeremy alleged that Shanna and her family asked him to terminate his parental rights. After a hearing, an agreed order was entered for both parties to undergo psychological evaluations.[2]

¶10.    On June 13, 2016, Shanna filed a motion for emergency relief, alleging that Dr. Jennifer Whitcomb, a psychologist hired by Shanna, stated that K.H. might have been sexually abused by Jeremy. But, testimony at that hearing disclosed that DHS's investigation regarding similar allegations was closed due to lack of evidence.

---

[2] The guardian ad litem (GAL) noted that Shanna's psychological exam evinced a slight anxiety disorder. The GAL did not mention Jeremy's supposed diagnosis of PTSD following a drive-by shooting that occurred while he was in his home (that he alleged was orchestrated by Shanna's family).

¶11.   On August 17, 2016, Jeremy filed another complaint for citation of contempt and motion for emergency modification after he alleged that Shanna left with K.H. and would not return her.  Jeremy requested an order for civil and criminal contempt to be entered against Shanna and for the trial court to sentence her to serve time in jail until he made up for the visitation that he missed.  Jeremy asserted that Shanna's constant refusal of visitation was a material circumstance that was adverse to K.H.  As a result, Jeremy maintains that this material circumstance would allow the trial court to modify custody of K.H. to him—removing the child from Shanna's primary custody.

¶12.   On September 12, 2016, Shanna filed her answer to Jeremy's complaint requesting the appointment of a guardian ad litem (GAL) and other relief.  On October 11, 2016, the trial court appointed Dana Bumgardner as the GAL.  In the GAL's initial report issued in 2016, she noted that Shanna made several reports of abuse to DHS.  These reports caused K.H. to undergo multiple physical exams and interviews.  The GAL stated that Shanna disregarded the effect that those exams and interviews would have on K.H.  Additionally, Shanna took pictures of K.H.'s private parts, which the GAL reported directly influenced K.H.'s behavior with Jeremy.  The GAL believed that Shanna not only failed to foster K.H. and Jeremy's relationship, but she also attempted to directly and negatively impact it. Ultimately, after her investigation, the GAL recommended that the trial court find there had been a material change in circumstances in Shanna's home that adversely affected K.H. Accordingly, she recommended that the trial court find, pursuant to an *Albright*[3] analysis,

---

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

physical custody be modified to Jeremy and that Shanna should enjoy standard visitation with K.H., while sharing joint legal custody. The GAL also recommended counseling and parenting classes for Jeremy and Shanna so that they could learn to effectively communicate.

¶13. On February 16, 2017, the GAL filed a motion requesting that Jeremy take K.H. to a counselor of his choosing and to deposit funds to the GAL. On February 23, 2017, Jeremy and Shanna agreed to proceed to a "trial" set for April 28, 2017, in Wayne County to litigate the outstanding issues before the court.

¶14. On March 1, 2017, the trial court granted the GAL's motion for relief and ordered Jeremy to take K.H. to counseling. On March 2, 2017, Shanna filed a motion for reconsideration regarding Jeremy's taking K.H. to counseling and failure of the GAL to communicate with her regarding her motion filed in February.

¶15. At a hearing on April 4, 2017, Jeremy testified that on March 12, 2017, during a scheduled visitation exchange, Shanna hit him on the chin and he pushed her away. Jeremy then alleged that Shanna "came at him." Shanna filed a police report with the Wayne County Sheriff's Office. Shanna testified and reported that Jeremy grabbed her hair and attempted to push her back into her car. Shanna also alleged that Jeremy "violently slung K.H. to the ground." Shanna stated that she filed an order of protection following her scuffle with Jeremy. The trial court ultimately denied Shanna's request for a domestic protection order finding that Shanna was the initial aggressor after she admitted that she slapped Jeremy on the chin first.

¶16. On April 10, 2017, Shanna filed a motion for removal of the GAL and for the

6

appointment of a new GAL. But the trial court denied Shanna's motion at a hearing on April 18, 2017.

¶17. On June 22, 2017, the trial court entered its findings of facts and conclusions of law regarding custody modification.[4] In that order, the trial court found that there had been a material change in circumstances that adversely affected K.H. and awarded Jeremy primary physical custody of K.H., with Shanna having standard visitation rights. The trial court also ordered Shanna to begin paying Jeremy the equivalent of 14% of her adjusted gross income and to reimburse Jeremy for 25% of all health care expenses once she obtained employment.

¶18. The trial court also found Shanna in civil contempt and ordered her to reimburse Jeremy for attorney's fees in the amount of $5,500 and to pay the outstanding GAL fees in the amount of $3,781.44. Shanna was also found guilty of constructive criminal contempt for willfully refusing to allow Jeremy visitation with K.H. on ten separate occasions. As a result, the trial court sentenced Shanna to incarceration in the Wayne County Jail for a term of thirty days on each count for a total of 300 days and fined her $100 for each count for a total of $1,000. But the trial court suspended the execution of the sentence on the condition that Shanna not violate the trial court's orders in the future. Shanna filed a motion to amend or correct the findings of fact and conclusions of law of the trial court. After a hearing, the chancery court denied Shanna's motion. Shanna appeals.

## STANDARD OF REVIEW

¶19. In *Edwards v. Zyla*, 207 So. 3d 1232, 1235 (¶10) (Miss. 2016), the Mississippi

---

[4] The court incorporated those findings of fact and conclusions of law in the final order of modification entered on July 19, 2017.

Supreme Court held that "the Court's standard of review for chancery court cases is well-settled: [t]he factual findings of a chancery court will not be disturbed absent a determination that the chancery court's findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied."

¶20.    "As for contempt, the standard of review depends on the classification of the contempt citation." *C.W. v. Lamar County*, 250 So. 3d 1248, 1252 (¶9) (Miss. 2018). "On one hand, '[i]f the contempt is civil, the proper standard utilized for review is the manifest error rule.'" *Id*. "On the other hand, when reviewing a citation for criminal contempt, th[e] [reviewing] Court 'will proceed ab initio and will determine on the record whether the person is guilty of contempt beyond a reasonable doubt.'" *Id*; *see also In re McDonald*, 98 So. 3d 1040, 1042-43 (¶4) (Miss. 2012).

## DISCUSSION

### I.    Whether the trial court erred in finding Shanna in constructive criminal contempt.

¶21.    The trial court found Shanna in willful civil contempt and found beyond a reasonable doubt that she was in constructive criminal contempt by denying Jeremy visitation on ten separate occasions.  Shanna believes this decision to be in error and in violation of her due-process rights.

¶22.    "With contempt matters, we defer to the chancellor's discretion." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶12) (Miss. 2011). "When reviewing a chancellor's contempt finding, we first determine whether the contempt is civil or criminal." *Id.*  In *Dennis v. Dennis*, the Mississippi Supreme Court stated the following regarding civil and criminal

8

contempt:

> If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act. Criminal contempt penalties, on the other hand, are designed to punish the defendant for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with court order.

824 So. 2d 604, 608 (¶8) (Miss. 2002).

¶23. "There are two forms of criminal contempt: direct and constructive." *Id*. at 608 (¶10). "Direct contempt occurs in the presence of the court and may be dealt with immediately. Indirect contempt occurs outside the presence of the court, and the defendant must be provided notice and a hearing." *Id*.

¶24. "[C]onstructive contempt involves actions which are committed outside the presence of the court." *Id.* at 609 (¶10). "In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing." *Id*. The accused is also "presumed innocent until proven guilty beyond reasonable doubt." *Id*. at (¶11).

¶25. Shanna alleges that she was not informed of the nature and cause of the accusation of criminal contempt and she was not given fair notice. "In the case of constructive criminal contempt, [the Mississippi Supreme Court] ha[s] held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing." *Id.* at 609 (¶10). Jeremy filed several citations for criminal contempt against Shanna, and both parties agreed to a trial or hearing to litigate any outstanding issues before

9

the trial court. Furthermore, Shanna never objected at trial, and the first time Shanna raised a violation of her due process rights is on appeal. Shanna has asked this Court to review this issue under the plain-error doctrine. Again, this Court is not restricted to review under the plain-error doctrine in this case.

¶26. The trial court found Shanna in constructive criminal contempt for denying ten visitations by Jeremy with K.H. and sentenced Shanna to thirty days in jail on each count for a total of 300 days, suspended, and $100 fine per violation, for a total of $1,000, suspended. The Mississippi Supreme Court has held that "[o]ne accused of criminal contempt is entitled to the same protections as any criminal defendant." *Graves v. State*, 66 So. 3d 148, 152 (¶15) (Miss. 2011). "For example, if the punishment is a fine exceeding $500 or imprisonment for more than six months, the accused is entitled to a trial by jury." *Id*.

¶27. After our review of the record, we find that Shanna was not entitled to a trial by jury even though the aggregate sentence and fine exceeded six months and five hundred dollars respectively. We do find that she was in a position to request that the trial judge recuse himself; rather, she waived that opportunity. Shanna admittedly did not object until after the trial court rendered its decision. In fact, Shanna allowed the trial court to adjudicate her rights and failed to file a motion asking the judge to recuse. "The failure to seek recusal generally is considered implied consent to have the judge go forward in presiding over the case." *Latham v. Latham*, 261 So. 3d 1110, 1113 (¶9) (Miss. 2019) (citing *Rice v. State*, 134 So. 3d 292, 299 (¶16) (Miss. 2014)); *see also Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000) (holding where the party knew of the grounds for the motion or with the

10

exercise of reasonable diligence may have discovered those grounds, and where that party does not move timely prior to trial, the point will be deemed waived). Therefore, we take the same position as the majority court in *Latham* and find that because Shanna failed to object to the judge's recusal and preserve the issue for appeal, any assignment of error relative to that issue is waived. *See Latham*, 261 So. 3d at 1115 (¶20).

¶28. Furthermore, this Court is not required to address issues that are not objected to at trial and preserved for appeal. *See Dennis*, 824 So. 2d at 611 (¶18) (holding that the contemnor waived claims of defective service and violation of due process when he objected for the first time on appeal); *see also EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n*, 247 F. 3d 333 (2d Cir. 2001) (contemnor waived claim that its due process rights were violated where it did not raise a due process argument until after court had rendered its decision).

¶29. While we are not bound by the trial court's decision on appeal or required to review this issue under the doctrine of plain error, the evidence presented during the hearings supports a finding that Shanna willfully and maliciously withheld visitation from Jeremy and filed frivolous complaints against him, resulting in ongoing DHS investigations and hearings.

¶30. Therefore, we affirm the trial court's decision to find Shanna guilty of constructive criminal contempt.

**II.     Whether the trial court erred in failing to consider the doctrine of unclean hands in awarding Jeremy attorney's fees.**

¶31. The chancery court found that Shanna's evidence was insufficient to justify finding

11

Jeremy in contempt for failure to pay her attorney's fees[5] and failure to pay for his share of the daycare and medical expenses. Shanna, however, argues that the trial court committed reversible error because Jeremy came to court with "unclean hands" and was not entitled to relief.

¶32. In the divorce judgment entered on December 2, 2015, the trial court awarded Shanna attorney's fees in the amount of $6,500 to be paid in monthly increments of $150. Jeremy was also required to pay a percentage of K.H.'s medical and daycare expenses. On February 2, 2016, Shanna filed a second motion for citation of contempt, alleging that Jeremy failed to pay all daycare expenses, reimburse her attorney's fees, and pay medical expenses. Jeremy testified that he had not made any payments to Shanna for her attorney's fees because of the way he had been portrayed during the hearings. Shanna asserts that this failure constitutes unclean hands. "The doctrine of unclean hands provides that 'he who comes into equity must come with clean hands.'" *In re Estate of Richardson*, 903 So. 2d 51, 55 (¶15) (Miss. 2005) (citing *Thigpen v. Kennedy*, 238 So. 2d 744, 746 (Miss. 1970)).

¶33. In the order of findings of fact and conclusions of law, the chancery court, while acknowledging that Jeremy had not made payments toward the attorney's fees awarded to Shanna in the judgment of divorce, declined to find Jeremy in contempt. "A chancellor does not have to hold a party in contempt even if he or she technically violated the law. . . ." *Riddick v. Riddick*, 906 So. 2d 813, 824 (¶37) (Miss. Ct. App. 2004). The trial court

---

[5] The chancery court acknowledged that Shanna had a judgment against Jeremy for the attorney's fees and that she could collect those fees via a writ of garnishment.

ultimately held Shanna in civil[6] contempt and found that Shanna's contemptuous conduct necessitated Jeremy to incur attorney's fees and the GAL fees.

¶34. This Court has held that "in contempt actions, attorney's fees are awarded 'to make the plaintiff whole.'" *Bounds v. Bounds*, 935 So. 2d 407, 412 (¶18) (Miss. Ct. App. 2006) (citing *Rogers v. Rogers*, 662 So. 2d 1111, 1116 (Miss. 1995)). "Where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party." *Mabus v. Mabus*, 910 So. 2d 486, 489 (¶8) (Miss. 2005).

¶35. Accordingly, we agree with the trial court that Shanna's conduct necessitated the attorney's fees and GAL fees that Jeremy incurred. The trial court declined to hold Jeremy in contempt; however, the holding does not negate the fact that Jeremy was ordered to pay Shanna's attorney's fees. Inasmuch, the trial court found that the appropriate action for Shanna to take would be to file a writ of garnishment. This Court finds no error.

### III. Whether the trial court erred in finding that a material change of circumstances occurred, justifying a change of custody of K.H.

¶36. Shanna asserts that the trial court's court modification of custody was against the overwhelming weight of the evidence and insufficient to support a finding that there was a material change in circumstances adversely affecting K.H., warranting custody modification.

¶37. Shanna relies on *Ash v. Ash*, 622 So. 2d 1264 (Miss. 1993), in support of her

---

[6] "If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil." *Dennis*, 824 So. 2d at 608 (¶8). "The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act." *Id*.

argument. In *Ash*, the Mississippi Supreme court held that "a mother's continual refusal to allow a father visitation did not constitute a material change of circumstances justifying a change in custody." *Id*. at 1266. The Court found that "[t]he better rule would be for a chancellor to enforce contempt orders through incarceration, when necessary, to insure compliance with custody provisions rather than resorting to a change of custody." *Id*.; *see also Blevins v. Bardwell*, 784 So. 2d 166, 179 (¶49) (Miss. 2001). "The 'totality of the circumstances' must be considered." *Ash*, 622 So. 2d at 1266.

¶38. But in *Ash*, the supreme court determined that the chancery court found, by clear and convincing evidence, "that the mother's interference with the father's visitation ha[d] been a material change of circumstances that c[ould not] be corrected by contempt; that it [wa]s and d[id] adversely affect the child and that it [wa]s in the child's best interest that he live with his father." *Ash*, 622 So. 2d at 1267. Essentially, the supreme court upheld the custody modification.

¶39. Further, the Mississippi Supreme Court has held that "[p]arental behavior that poses a clear danger to [a] child's mental or emotional health can justify a custody change." *McDonald v. McDonald*, 39 So. 3d 868, 880 (¶37) (Miss. 2010) (citing *Morrow v. Morrow*, 591 So. 2d 829, 833 (Miss. 1991)). Furthermore, "[i]n determining whether a material change of circumstances has occurred, a chancellor should look at the overall circumstances in which a child lives." *Id*. (internal quotation marks omitted).

¶40. Here, the trial court found by clear and convincing evidence that Shanna exhibited an alarming pattern of denying Jeremy's visitation of K.H. without just cause. The trial court

noted that Shanna had also filed multiple misdemeanor criminal charges against Jeremy, filed a request for a domestic-violence order, and filed two felony charges against Jeremy. The GAL, after conducting a thorough *Albright* analysis, found that there had been a material change in circumstances in Shanna's home that adversely affected K.H. The GAL noted the inappropriate and disturbing photos that Shanna sent of K.H., claiming that she had been abused. The GAL also mentioned that Shanna initiated several DHS claims against Jeremy alleging that he sexually assaulted K.H. These claims, however, were later proven to be unsubstantiated. As a result, the GAL recommended that physical custody be modified to Jeremy, noting that Shanna should enjoy standard visitation with K.H. and the parties continue to share joint legal custody. It appears that the trial court considered the totality of the circumstances affecting K.H. since Shanna and Jeremy's divorce in 2015. The trial court ultimately found the following:

> There has been a material change in the circumstances which adversely affects the minor child, [K.H.] Shanna has made multiple false accusations that [K.H.] has been sexually abused by Jeremy, causing [K.H.] to undergo multiple unnecessary physical examinations, Shanna has wil[l]fully refused Jeremy visitation with [K.H.] and has done everything she could do to alienate [K.H.] from Jeremy. It is [in] the best interest of [K.H.] that Jeremy be given her primary physical custody with Shanna to have this Court's standard visitation rights.

¶41. After review of the record, we cannot say that the trial court's decision was manifestly wrong in finding Shanna in criminal and civil contempt. We also do not find error in the trial court's decision to award Jeremy attorney's fees. Accordingly, we find that there was substantial evidence to support the trial court's findings of fact and conclusions of law and affirm the custody modification.

15

¶42. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**