## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 91-CA-00906-SCT

*JOHN MANSOUR, INDIVIDUALLY, AND JOHN MANSOUR D/B/A MANSOUR'S SHOES, AND JOHN MONSOUR D/B/A MANSOUR'S*

*v.*

*CHARMAX INDUSTRIES, INC., D/B/A D'ROSSANA (DIVISION OF TUSCANY SHOES)*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 8/29/91 |
| TRIAL JUDGE: | HON. HOWARD Q. DAVIS, JR. |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILIP MANSOUR, SR. |
| ATTORNEY FOR APPELLEE: | DOUGLAS C. WYNN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART - 9/12/96 |
| MOTION FOR REHEARING FILED: | 1/6/95 |
| MANDATE ISSUED: | 9/19/96 |

### EN BANC.

### PRATHER, PRESIDING JUSTICE, FOR THE COURT:

¶1. The motion for rehearing is denied and the original opinion is withdrawn and these opinions are substituted therefor.

### I. INTRODUCTION

¶2. This case is appealed from the Circuit Court of Washington County. After a hearing for contempt held on August 22, 1991, the trial court entered an order dated August 29, 1991. The trial court in its order found John Mansour, Jr. was evading a prior judgment against Mansour Shoes, Inc. The order granted attorney's fees to Charmax Industries, Inc. in attempting to collect the judgment. The order also allowed Charmax Industries, Inc. to execute the earlier trial judgment and contempt citation award against John Mansour, Jr. personally, as well as the assets of his business.

¶3. From this ruling, John Mansour, Jr. assigns as error the following:

**A. Whether the trial court had the authority to issue a contempt citation against John Mansour, Jr. personally, or only Mansour Shoes, Inc.**

**B. Whether the trial court had the inherent authority to issue a civil contempt citation for compensatory damages, or whether the trial court was bound by statutory constraints.**

## II. STATEMENT OF THE FACTS

¶4. Three actions occurred in this case. The first action involved Charmax Industries, Inc. against Mansour Shoes, Inc. in a civil action for the debt. The second action involved the attempted collection of the judgment awarded to Charmax Industries, Inc. against Mansour Shoes, Inc. In the third action, Charmax Industries, Inc. filed a contempt petition against Mansour Shoes, Inc. and John Mansour, Jr. personally for an alleged evasion of the judgment. It is the lack of service of process against John Mansour, Jr. individually in the third action which is the crux of this case.

¶5. Tuscany Shoes, Inc. sold a shipment of shoes to Mansour Shoes, Inc. on December 26, 1985. Mansour Shoes, Inc. found these shoes to be defective. Mansour Shoes, Inc. alleged that it called the defect to the seller's attention. The seller denied Mansour Shoes, Inc.'s assertion.

¶6. On November 6, 1986, Tuscany Shoes, Inc. assigned its cause of action to Charmax Industries, Inc., the appellee. Charmax Industries, Inc. filed suit against Mansour Shoes, Inc., on April 6, 1988, in the Circuit Court of Washington County. Charmax Industries, Inc. properly served process on Mansour Shoes, Inc. in this first action. Mansour Shoes, Inc., as Mansour Shoes, Inc., defended on the grounds that the shoes were defective, and Tuscany Shoes, Inc. did not attempt to cure their defect.

¶7. On April 4, 1989, the jury found for Charmax Industries, Inc. Thereafter, Charmax Industries, Inc., attempted to execute writs of garnishment and attachment. The service of process was proper against Mansour Shoes, Inc., in this second action. These attempts were fruitless. Mansour Shoes, Inc. had no assets on hand to satisfy the judgment.

¶8. Charmax Industries, Inc., brought a motion for contempt of court against John Mansour, Jr., individually, and Mansour Shoes, Inc., on July 8, 1991. This contempt motion was the third action. Charmax Industries, Inc. served process to Philip Mansour, Jr. only. Philip Mansour, Jr. was Mansour Shoes, Inc.'s attorney of record. John Mansour, Jr., who was named as a defendant in the contempt petition, was never individually served with process.

¶9. Charmax Industries, Inc., asserted that John Mansour, Jr., the president of Mansour Shoes, Inc., had evaded the judgment against Mansour Shoes, Inc. through rearranging the business operation of Mansour Shoes, Inc. from a corporation to a sole proprietorship owned by John Mansour, Jr.. In addition, Charmax Industries, Inc. stated that John Mansour, Jr. had not submitted the necessary documents in discovery to fully determine Mansour Shoes, Inc.'s status as an operating business.

¶10. John Mansour, Jr. [as president of Mansour Shoes, Inc.] personally appeared in that capacity[1] argued that Mansour Shoes, Inc. had no assets. He later admitted that Mansour Shoes, Inc. had previously owned some assets in fixtures at the store, but they were now discarded. He stated that he operated the business as a sole proprietorship. John Mansour, Jr. later admitted he did not know why he did not assert that Mansour Shoes, Inc. was not a business owning assets in his answer to Charmax Industries, Inc.'s complaint. John Mansour, Jr. explained his inability to produce the

requested financial documents at trial. He stated his accountant during this period was now senile and unable to file the proper documents. John Mansour, Jr. could not even find the records at his accountant's office, let alone produce them.

¶11. The trial court found that John Mansour, Jr. was evading the first judgment and agreed with Charmax Industries, Inc.'s assertions. The trial court found that John Mansour, Jr. was not "forthright" in discovery and ordered that Charmax could enforce its judgment against Mansour Shoes, Inc. or John Mansour, Jr. personally. The trial court awarded attorney's fees and costs in attempting to enforce this judgment.

¶12. John Mansour, Jr. filed notice of appeal on November 6, 1991.

### III. ANALYSIS

**A. Whether the trial court had the authority to issue a contempt citation against John Mansour, Jr. personally, or only Mansour Shoes, Inc.**

¶13. The trial court could not issue a contempt citation against John Mansour, Jr. The trial court did not have jurisdiction over John Mansour, Jr. A trial court can acquire jurisdiction over an individual through service of process. *Aldridge v. First Nat. Bank*, 165 Miss. 1, 14, 144 So. 469, 470 (1932). In addition, a trial court can acquire jurisdiction over the person through his appearance. *State ex rel Moak v. Moore*, 373 So. 2d l011, 1012 (Miss. 1979). Without either occurrence, the trial court does not have jurisdiction over the person. *Id.*

¶14. It is possible to waive a defect in service of process, and the defense of personal jurisdiction. M.R.C.P. 12(h)(1). *See also H & W Transfer & Cartage Service, Inc. v. Griffin*, 511 So. 2d 895, 901 (Miss. 1987) (asserting objections to venue are waived without objection).

¶15. However, in this case, there was no service of process on John Mansour, Jr. individually at all. Charmax served notice on Mansour Shoes, Inc.'s agent, Philip Mansour, Jr. At most, the contempt petition itself was the only indication to John Mansour, Jr. that he might personally be liable for contempt. The pivotal question becomes whether the petition constitutes sufficient notice to confer personal jurisdiction absent an answer or appearance by John Mansour, Jr.

¶16. The existence of personal jurisdiction depends upon reasonable notice to the defendant. *Noble v. Noble*, 502 So. 2d 317, 320 (Miss. 1987), *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 70 S. Ct. 652, 656-57, 94 L. Ed. 865, 873 (1950).

¶17. "Absent some proof of receipt of summons" such reasonableness is questionable. *Noble*, 502 So. 2d at 320. Unless such a defendant made an answer or appearance, the trial court would not have jurisdiction with this type of summons. *Id.* An affidavit of service upon a party personally is sufficient for reasonable notice. *Penton v. Penton*, 539 So. 2d 1036, 1038 (Miss. 1989). Likewise, an acknowledgment of service by the party is sufficient. *Id.* Unlike *Penton*, there is no such proof of summons upon John Mansour, Jr., personally. Like *Noble*, John Mansour, Jr. made no answer or appearance. Therefore, there was no reasonable notice. As a result, the trial court had no personal jurisdiction over John Mansour, Jr.

¶18. Mansour Shoes, Inc. had notice in the contempt citation that Charmax Industries, Inc. intended to have both the corporation and John Mansour, Jr. found liable for contempt. As president and shareholder of this corporation, John Mansour, Jr. should have known about Charmax Industries, Inc.'s intent. However, this Court has held that even actual knowledge of a suit does not excuse proper service of process. ***Brown v. Riley***, 580 So. 2d 1234, 1237 (Miss. 1991). Complete absence of service of process offends due process and cannot be waived. ***Edwards v. James****,* 453 So. 2d 684, 686 (Miss. 1984).

¶19. The trial court judge is correct in asserting that our rules allow a party to enforce a judgment against a third party unnamed in the underlying proceedings. M.R.C.P. 71. However, this Rule requires that the third party "is liable to the same process for enforcing obedience to the order as if he were a party." M.R.C.P. 71. As process is required between parties, so it must be between parties and non-parties.[(2)]

¶20. Since no service of process at all against John Mansour, Jr. occurred, the trial court had no jurisdiction over him. This Court has recently ruled that defects in procedure impacting on notice are not permissible. ***Powell v. Powell,*** 644 So. 2d 269, 273-74 (Miss. 1994). This Court will reverse cases featuring summons with such defects. ***Id.*** As a result, the trial court could not find John Mansour, Jr. in contempt.

## IV. CONCLUSION

¶21. Since Charmax did not secure service of process upon John Mansour, Jr. personally, the contempt citation is invalid against him and the trial judge's order is reversed as to him. The contempt citation against Mansour Shoes, Inc., regarding the evasion of the judgment, was well founded in this case and an award of attorney's fees is appropriate here. The motion for rehearing is denied.

**¶22. JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART.**

**LEE, C.J., PITTMAN, BANKS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., ROBERTS AND MILLS, JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶23. The majority decision finding the trial court without personal jurisdiction over John Mansour, Jr. where Mansour made a personal appearance at the contempt hearing on August 21, 1991, with full knowledge of Charmax's intent to hold him personally liable for contempt is totally misplaced. As recognized by the majority, a trial court can acquire jurisdiction over a person through his appearance. ***State ex rel. Moak v. Moore***, 373 So. 2d 1011, 1012 (Miss. 1979) (en banc). The existence of personal jurisdiction depends upon reasonable notice to defendant. *See **Noble v. Noble***, 502 So. 2d 317, 320 (Miss. 1987) (citing ***Mullane v. Central Hanover Trust Co.***, 339 U.S. 306, 313-14(1950)).

¶24. Based on the facts revealed in the record, it was reasonable of the trial court to conclude it had personal jurisdiction over Mansour individually. Mansour attended the entire hearing, and he did so without ever raising any objections as to the court's personal jurisdiction over him. He personally appeared and actually argued that Mansour Shoes, his sole proprietorship, had no assets, and that he was unable to produce the requested financial documents at trial because his accountant was senile and unable to file the proper documents. As to whether Mansour had notice of the intent to hold him individually in contempt, it is **undisputed** that Mansour had full knowledge of this fact from the contempt petition itself. After all, he was the president and sole shareholder of Mansour Shoes, Inc. As sole shareholder of Mansour Shoes, he was acutely aware of all the legal proceedings as indicated by the fact he hired his own relative to represent the company. It is incredible the majority fails to find that his personal appearance constituted a waiver of process where it is accepted that Mansour had actual notice of Charmax's intent to hold him personally liable.

*¶25. Edward v. James*, 453 So. 2d 684 (1984) and *Brown v. Riley*, 580 So. 2d 1234, 1237 (Miss. 1991) stand for the proposition that complete absence of **notice** offends due process. The *Brown* case actually dealt with statutory notice of land forfeiture proceedings for delinquent taxes. 580 So. 2d at 1237. This Court concluded that notice was defective under the statute, not only because the parties failed to comply with M.R.C.P. 4, but also because notice to the public was not given forty-five days prior to the expiration of the redemption period.[(3)] We noted that the "most important safeguard involving any person who stands to suffer from some official action is notice." *Brown*, 580 So. 2d at 1237; *see also Edwards*, 453 So. 2d at 686 (reversing chancery court decree because "record [was] uncontradicted that Edwards had no **notice** of the special setting on the petition to modify the decree")(emphasis added). The facts revealed and undisputed in the majority opinion itself indicate Mansour had notice of the claim against him individually in the actual petition for contempt. Holding Mansour subject to the jurisdiction of the court under the circumstances of this case would therefore be completely consistent *Brown* and *Edwards*.

¶26. If the majority wishes to stand by its suggestion that *Edwards* and *Brown* set forth the rule of law that complete absence of **service of process** offends due process, then their opinion is entirely self-conflicting -- it already expressly acknowledged that a court can acquire jurisdiction over a person through personal appearance and reasonable notice. Not only is the majority opinion completely contradictory, but the majority has, in effect, abolished the entire concept of waiver of process by reaching this decision under these particular circumstances. The majority's resolution of this case is a perfect example of a desperate attempt to apply a literal interpretation of the rules to a situation not contemplated by them at the expense of their underlying purpose and simple common sense.

¶27. Because Mansour had notice of Charmax's attempt to hold him personally liable for contempt and attended the contempt hearing on August 12, 1991, he was subject to the personal jurisdiction of the lower court. Accordingly, I dissent.

**SULLIVAN, P.J., ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. The motion for rehearing indicates his appearance was in response to a court order directing the appearance of "John Mansour, the President of the Defendant" with records described therein.

2. Service of process, as it relates to M.R.C.P 71, is worthy of discussion. The question of using Rule 71 as a substitute for service of process on the contempt hearing itself is new to Mississippi. However, federal courts have indirectly asserted that service of process is a requirement to personal jurisdiction before Fed.R.Civ.P. 71 applies. *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F. Supp. 740, 764-77 (E.D. Wis. 1994).

State courts have gone further, holding that Rule 71's use against non-parties cannot be used "without regard to the effect of the decree on the property rights of the individual despite the absence of due process in the orderly course of a judicial proceeding." *Alger v. Peters*, 88 So. 2d 903, 906 (Fla. 1956) (en banc). As a result, this Court requires service of process for the show cause order itself, whether Rule 71 applies or not.

3. In its conclusion, this Court required strict compliance with the notice provisions of the land forfeiture statute since statutes dealing with land forfeitures for delinquent taxes are construed strictly in favor of the landowner. *Brown*, 580 So. 2d 1234.