# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01402-SCT

*DAVID ANTHONY DENNIS*

*v.*

*GRETCHEN JOHNSON DENNIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/22/2001 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM MITCHELL MORAN |
| ATTORNEY FOR APPELLEE: | A. R. WRIGHT, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED -08/22/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/2002 |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This appeal raises issues of service of process for constructive criminal contempt proceedings and due process protections afforded a contemnor in such proceedings. We find that the contemnor waived all claims concerning his defective service of process and violation of his due process rights. Therefore, we affirm the judgment below.

## FACTS

¶2. In March of 2001, Gretchen Johnson Dennis and David Anthony Dennis were granted a divorce on the grounds of irreconcilable differences by the Leake County Chancery Court. The chancery court ordered David to make current through March, 2001, all mortgage payments on a mobile home granted to Gretchen under the property settlement (Gretchen was also granted all household items in the mobile home); and to pay Gretchen $4,000 to cover the costs of moving the mobile home. After David failed to pay the mortgage for January, February and March, 2001, removed household items from the mobile home, and threatened the mobile home movers with a gun, Gretchen filed a motion for civil and criminal contempt citation. After a hearing, the chancellor found David to be in civil and criminal contempt. In the order entered on May 23, 2001, the chancellor gave Gretchen 30 additional days to move the mobile home, and ordered David not to interfere with the moving process, to return certain household items which he had taken from the mobile home, and to pay the delinquent mortgage payments. The chancellor ordered that David would be

immediately incarcerated if he interfered with the moving process. Finally, the chancellor ordered that if David did not return the household items and make the delinquent mortgage payments by May 30, 2001, he would be incarcerated.

¶3. David then filed a motion for civil and criminal contempt against Gretchen for failure to comply with the court-ordered visitation schedule. The hearing was set for July 18, 2001. On July 18, 2001, an agreed order rescheduling the hearing for August 22, 2001, was entered. The agreed order was signed by both David and Gretchen.

¶4. On August 8, 2001, Gretchen filed an answer to David's motion for contempt and a motion for contempt citation against David. These two pleadings were served on David by mailing them to David's attorney. A notice setting a hearing on the motion for contempt for August 22, 2001, was also mailed to David's attorney.

¶5. In Gretchen's motion for contempt, she specifically requested that the chancellor hold David in civil and criminal contempt and that David be incarcerated. In support of her motion Gretchen alleged that, when she had returned to the home site to move a utility pole which could not have been moved when the mobile home was moved, David followed her to a neighbor's house and shot a gun at her. Also, even though the chancellor ordered David to pay her attorney's fees from the first motion for contempt, he had not done so.

¶6. A hearing on both motions for contempt was held on August 22, 2001. Both sides announced ready and it was decided by mutual agreement that David go forward on his motion for contempt first; however, Gretchen's allegations against David were also addressed from the beginning of the hearing. David testified concerning Gretchen's alleged failure to allow him visitation. On cross-examination and on re-direct, however, David substantively addressed Gretchen's allegations contained in her motion for contempt and denied them all. David called three witnesses (including himself) who addressed Gretchen's allegations. He also called two adverse witnesses (one of whom was Gretchen) who addressed Gretchen's allegations. In other words, other than David's testimony on direct examination and that of his sister, David did not introduce any evidence to support the allegations in *his* motion for contempt. After both sides rested, the chancellor found that David was in criminal contempt beyond a reasonable doubt and that David had failed to prove that Gretchen was in contempt of the visitation order. The chancellor ordered that David pay attorney's fees to Gretchen, be incarcerated for 30 days. At no time during the hearing did David object to the chancellor's disposition of the issues before the court. From this order, David appeals.

## STANDARD OF REVIEW

¶7. We carefully examine contempt convictions. *Melvin v. State*, 210 Miss. 132, 48 So. 2d 856 (1950). Generally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than an appellate court. *Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990). A determination of whether the alleged contempt is either civil or criminal in nature must first be made. If the contempt is civil, the proper standard utilized for review is the manifest error rule. *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994). If the contempt is criminal, then we will proceed ab initio and determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt. *Id*.

## DISCUSSION

## I. CIVIL vs. CRIMINAL CONTEMPT.

¶8. If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. *Id.* at 796. The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act. *Id*. Criminal contempt penalties, on the other hand, are designed to punish the defendant for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with court order. *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 415 (Miss. 1989).

¶9. In the case sub judice, it is clear that the contempt is criminal in nature. *See, e.g., Newell v. Hinton*, 556 So. 2d 1037, 1044 (Miss. 1990) ("[A] criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court"). The circuit court held David in contempt for noncompliance with its order. Accordingly, we proceed ab initio and determine on the record whether David is guilty of contempt beyond a reasonable doubt.

## II. DIRECT vs. CONSTRUCTIVE CONTEMPT.

¶10. There are two forms of criminal contempt: direct and constructive. Direct contempt occurs in the presence of the court and may be dealt with immediately. Indirect contempt occurs outside the presence of the court, and the defendant must be provided notice and a hearing.

> Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . .

> Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court. . .  In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.

*Moulds v. Bradley*, 791 So. 2d 220, 224-25 (Miss. 2001) (citations omitted). The acts complained of herein were committed outside the presence of the court; therefore the acts constituted constructive criminal contempt and procedural due process safeguards attached.

## III. DUE PROCESS IN CONTEMPT PROCEEDINGS.

¶11. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965). *See also Fahle v. Cornyn*, 231 F.3d 193, 196 (5th Cir. 2000); *Crowe v. Smith*, 151 F.3d 217, 230-31 (5th Cir. 1998). "Criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988). A defendant in contempt proceedings is entitled to notice and is entitled to be informed of the nature and cause of the accusation, of his rights to be heard, to counsel, to call witnesses, to an unbiased judge, to a jury trial, and against self-incrimination, and that he is presumed innocent until proven guilty beyond reasonable doubt. *Young v. United States ex rel. Vuitton*

*et Fils S.A.*, 481 U.S. 787, 798-99, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987); *see also* **Moulds**, 791 So. 2d at 225; ***Ramsay v. Ramsay***, 125 Miss. 715, 88 So. 280 (1921).

¶12. David alleges that his due process rights were violated because: (1) Gretchen failed to serve the motion for contempt on him personally, but on his attorney instead; (2) Gretchen failed to serve the motion for contempt in accordance with M.R.C.P. 81; (3) since Gretchen had asked for the chancellor to find David in civil and/or criminal contempt in every motion for contempt she had filed, whether the contempt was civil or criminal was not known to David until the chancellor delivered his opinion in open court; and (4) the chancellor combined the two motions for contempt in one hearing and allowed David to testify without informing him of his Fifth Amendment rights.

## IV. WHETHER SERVICE OF THE

## MOTION FOR CONTEMPT WAS SUFFICIENT.

¶13. In contempt proceedings, "[c]omplete absence of service of process offends due process and cannot be waived." *Mansour v. Charmax Indus., Inc.*, 680 So. 2d 852, 855 (Miss. 1996) (citing ***Edwards v. James***, 453 So. 2d 684, 686 (Miss. 1984)). There is no doubt that David's right to proper notice was violated. In a matter involving criminal contempt, the defendant must be served in accordance with M.R.C.P. 81, which requires that a summons be issued. *See, e.g.*, ***Powell v. Powell***, 644 So. 2d 269, 273-74 (Miss. 1994) (discussion of Rule 81's applicability to contempt charges in domestic proceedings). Although David's attorney received a copy of the motion for criminal contempt and a notice of the hearing, no summons was issued, and the motion and notice were not served upon David.

## V. WHETHER DAVID WAIVED HIS CLAIMS.

¶14. Under certain circumstances, the due process right to notice may be waived:

The due process rights to notice and hearing prior to a civil judgment are subject to waiver.

And in ***Boddie v. Connecticut***, [401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)], the Court acknowledged that "the hearing required by due process is subject to waiver."

This, of course, parallels the recognition of waiver in the criminal context where personal liberty, rather than a property right, is involved.

Even if, for present purposes, we assume that the standard for waiver in a corporate-property-right case of this kind is the same standard applicable to waiver in a criminal proceeding, that is, that it be voluntary, knowing, and intelligently made, or "an intentional relinquishment or abandonment of a known right or privilege" . . . .

*D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86, 92 S. Ct. 775, 782, 31 L. Ed. 2d 124 (1972) (citations omitted).

¶15. The United States Court of Appeals for the Fifth Circuit has ruled as follows:

A judgment rendered in the absence of personal jurisdiction is void and must be set aside. To acquire jurisdiction over the person, a court must serve on the person a document, "such as a summons, notice, writ or order." In addition, a person waives the defense of defective service if he voluntarily

submits himself to the court's jurisdiction by appearing before it and allowing it to adjudicate his rights. Such formal notice of contemplated action, or the waiver of notice by voluntary appearance, is part of the due process limitations on federal courts' jurisdiction.

*McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995) (citations omitted).

¶16. We find that David waived his claims of defective service and violation of due process. The chancery court had personal jurisdiction over him because chancery courts have on-going personal jurisdiction over parties to a divorce proceeding. David's attorney was served with the motion for contempt two weeks prior to the hearing, the receipt of which was not disputed. David was given a meaningful opportunity to explain his actions which were the subject of the motion for contempt and did, in fact, aggressively defend himself at the hearing. He has not shown that he was prejudiced in any way by the lack of proper notice. He has not claimed that he would have called any more witnesses, or needed more time to prepare, put on other evidence or changed his defense in any way had he been given proper notice. As far as the right against self-incrimination is concerned, when he testified, David denied all of the allegations against him and did not admit any.

¶17. David's argument that he did not have proper notification that he might be subject to criminal contempt is specious at best. The chancellor had previously cited him for criminal contempt and had warned him that he would be incarcerated if he did not obey the court's orders. *See Hopkins v. Jarvis*, 648 F.2d 981 (5th Cir. 1981) (contemnor was given adequate notice that he was subject to criminal contempt for failure to pay court-ordered alimony and child support where, though order to show cause requiring his presence in court clearly indicated that he would be subject to civil contempt, at hearing in prior contempt proceeding, the judge had admonished him in open court that any wilful failure to abide by rules of court would result in his confinement in county jail). In fact, it was under the threat of incarceration that David made current the mortgage payments on the mobile home and returned certain household items to the mobile home.

¶18. Most importantly, David allowed the chancellor to adjudicate his rights. He never made an objection pertaining to defective service from the beginning to the end of the hearing. We are not required to address issues that are not objected to at trial and preserved for appeal. *Caston v. State*, 2002 WL 1038749 *24 (Miss. 2002) (citing *Gatlin v. State*, 724 So. 2d 359, 369 (Miss. 1998) ("If no contemporaneous objection is made, the error, if any, is waived."); *Carr v. State*, 655 So. 2d 824, 832 (Miss. 1995) (appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely)). *See also EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333 (2d Cir. 2001) (contemnor waived claim that its due process rights were violated where it did not raise a due process argument until after court had rendered its decision); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) (contemnor waived claim of due process violations where he failed to raise a due process objection before the court). David had ample time between the date the motion was served on his attorney until the hearing to make a written objection to the motion. Instead, he announced ready at the beginning of the hearing, defended the allegations against him and even subpoenaed witnesses to rebut the allegations. The first time David has ever objected to defective service or to a violation of due process is on appeal.

## CONCLUSION

¶19. We affirm the Leake County Chancery Court's judgment finding that David Anthony Dennis was in constructive criminal contempt and sentencing him to 30 days' incarceration.

¶20. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**