# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00622-COA

**EARLINE KIDDY (BROWN) WALLACE**                                  **APPELLANT**

**v.**

**DAVID LESLIE WALLACE**                                                          **APPELLEE**

DATE OF JUDGMENT:                06/13/2019
TRIAL JUDGE:                             HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:   DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     RICHARD SHANE McLAUGHLIN
                                                    STEVEN GLEN ROBERTS
ATTORNEYS FOR APPELLEE:       JERRY WESLEY HISAW
                                                    JOSEPH M. SPARKMAN JR.
NATURE OF THE CASE:               CIVIL - DOMESTIC RELATIONS
DISPOSITION:                            AFFIRMED IN PART; REVERSED AND
                                                    REMANDED IN PART - 11/24/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **EN BANC.**

   **WILSON, P.J., FOR THE COURT:**

¶1.    David and Earline Wallace consented to an irreconcilable differences divorce and stipulated that the chancellor would determine and divide the marital estate and decide Earline's request for alimony.  The chancellor granted the divorce, divided the marital estate, and denied alimony.  The divorce decree required Earline to sign a quitclaim deed relinquishing her interest in the former marital home in exchange for a cash payment from David.  After Earline failed or refused to sign the quitclaim deed, the chancellor found her in contempt and awarded attorney's fees to David.

¶2. On appeal, Earline argues that the chancellor erred by (1) failing to account for a marital asset (an increase in David's equity in a commercial property) in the division of the marital estate; (2) declining to award alimony; (3) finding her in contempt; and (4) allowing David's attorney to ask leading questions at the contempt hearing. We affirm in part and reverse and remand in part. We agree with Earline on the first issue and therefore reverse and remand for an equitable division of the asset at issue. We also reverse and remand on the issue of alimony—not because the denial of alimony was error but only so that the chancellor may consider the division of property and the issue of alimony together. We affirm the chancellor's finding of contempt and award of attorney's fees to David. Finally, although the chancellor abused her discretion by overruling Earline's objection to a leading question, the error was harmless.

**FACTS AND PROCEDURAL HISTORY**

¶3. David and Earline were married in 2008. Both parties had been married previously and had children from prior marriages. The youngest of their children was already in high school by the time the parties married, and all of their children are now emancipated.

¶4. In 2016, Earline filed a complaint for divorce, and David filed a counter-complaint for divorce. At the time, Earline was forty-seven years old, and David was fifty-three years old. They later consented to an irreconcilable differences divorce and stipulated that the chancellor would divide the marital estate and rule on Earline's request for alimony.

¶5. David is the fifty-percent owner of a business, All Major Appliances, that he started prior to the parties' marriage. David has pre-tax income of at least $100,000 per year. At

2

the start of the marriage, Earline was self-employed doing light construction and home remodeling. However, Earline has not worked since she had neck or back surgery around 2010. She testified that she is unable to work, but she presented no medical evidence to support her alleged disability. The chancellor was "not convinced that [Earline] is disabled or unable to work" and found that Earline "chooses not to work." The chancellor noted that Earline claimed that she needed "new doctors" and additional surgery but had "not sought out new doctors while she [was] still on [David's] health insurance."

¶6. The chancellor found that David's one-half interest in his business and his one-half interest in a building on Stateline Road in Southaven were his separate property. David and his business partner own the Stateline Road building and lease it to their business. The chancellor found that David's one-half interest in his business increased in value by $40,000 during the marriage. The chancellor found that this increase was a marital asset and ordered David to pay Earline $10,000 for her interest. The chancellor found that Earline failed to prove that the Stateline Road building had increased in value during the marriage.

¶7. The chancellor awarded David the marital home, which he had owned prior to the marriage. The chancellor found that there was $40,000 of equity in the home, ordered David to pay Earline $20,000 for her interest, and ordered Earline to sign a quitclaim deed conveying her interest in the property to David. The chancellor also awarded Earline two vehicles valued at $17,500 and $17,900 and ordered David to pay off the notes on both vehicles. In total, Earline was awarded marital assets valued at $70,040, while David was awarded marital assets valued at $61,000.

3

¶8.    The chancellor declined to award alimony.  The chancellor found that Earline, who was fifty years old at the time of the divorce, could return to work.  The chancellor acknowledged David had greater assets and income than Earline; however, the chancellor pointed out that those disparities already existed when the parties were married in 2008.  The chancellor also observed that David had paid Earline temporary alimony of $1,200 per month for thirty-one months during the parties' separation, which had served a purpose similar to rehabilitative alimony.  The chancellor also noted that Earline would receive $30,000 in cash from David as part of the equitable distribution.

¶9.    Earline filed a notice of appeal from the divorce decree.  Four days later, on April 9, 2019, David filed a motion for contempt.  David alleged that although he had immediately paid Earline $20,000 for her interest in the marital home, Earline had refused to sign a quitclaim deed as required by the divorce decree.  David also alleged that Earline had failed to remove her property from the marital home as required by the divorce decree.  David asked the court to find Earline in contempt, order her to sign the deed, and award him attorney's fees.

¶10.    On April 10, 2019, Earline filed a motion to stay the judgment pending appeal without a supersedeas bond.  The same day, Earline also filed a "Response" to David's motion for contempt.  In her response, Earline argued that she was not in contempt because her contemporaneously-filed motion to stay the judgment operated as an automatic stay of the judgment.

¶11.    On May 13, 2019, the chancellor held a hearing on David's motion for contempt and

4

Earline's motion to stay the judgment pending appeal. The chancellor ordered Earline to remove her property from the marital home by noon on May 19, denied Earline's motion to stay the judgment, and continued the hearing on David's motion for contempt to June 3.

¶12. On May 29, 2019, Earline filed an "Answer and Counterclaim" to David's motion for contempt. Earline's counterclaim alleged that David had prevented her from removing her property from the marital home. Earline requested an award of attorney's fees based on David's alleged contempt. The same day, Earline also filed a separate "Motion to Dismiss" David's motion for contempt.

¶13. On June 3, 2019, the chancellor held a hearing on David's motion for contempt and Earline's counterclaim for contempt. In response to David's motion for contempt, Earline offered a copy of a quitclaim deed that she had belatedly signed on April 16, 2019—after David's motion was filed. In support of her counterclaim, Earline testified and called David as an adverse witness.

¶14. On June 13, 2019, the chancellor found that Earline was in contempt for initially refusing to sign the quitclaim deed and awarded David attorney's fees of $4,200. The chancellor found that David was not in contempt and therefore denied Earline's counterclaim. Earline then filed a notice of appeal from the chancellor's order.

¶15. On appeal, Earline argues that the chancellor erred by (1) failing to account for an increase in David's equity in the Stateline Road building in the division of the marital estate; (2) declining to award alimony; (3) finding her in contempt; and (4) permitting David's attorney to ask leading questions during the contempt hearing.

5

**ANALYSIS**

¶16.    We will not reverse a chancellor's findings of fact or discretionary rulings unless the chancellor abused her discretion, committed a manifest or clear error, or applied the wrong legal standard. *Townsend v. Townsend*, 859 So. 2d 370, 371-72 (¶7) (Miss. 2003). We review issues of law de novo. *Id.* at 372 (¶7).

### I.    The Stateline Road Building

¶17.    The chancellor found that the Stateline Road building was a non-marital asset because David owned it prior to the marriage. But the chancellor also found that an increase in the property's value could be a marital asset subject to equitable division. The chancellor then found that the value of the property had "actually decreased" by about $12,000 during the marriage.[1] The chancellor acknowledged that David's "equity position had improved at some point [during the marriage] because of the payments he and his partner had made on the building." The chancellor also acknowledged that there was some evidence that David and his partner had received cash distributions when they refinanced the property. However, the chancellor stated that there was no evidence of the amount of debt on the property at the start of the marriage. For that reason, the chancellor found "that there [was] no increase in the value of this property to equitably divide with Earline."

¶18.    On appeal, Earline argues that she presented sufficient evidence to establish an increase in the value of David's equity in the property during the marriage. David testified that he and his partner owed approximately $261,000 on the property in 2011. The

---

[1] The chancellor's finding was based on the expert opinion of an appraiser who testified for David at trial.

6

chancellor set the demarcation date for purposes of the division of assets as July 25, 2016, the date of the temporary order in the case. David also testified that by 2017, he and his partner had reduced their debt on the building to approximately $114,000. At that time, David and his partner had refinanced the building for approximately $221,000, and each of them took approximately $50,000 in cash from the refinancing.

¶19. Earline reasons that this evidence shows that by paying down the debt on the property, David and his partner increased their equity position in the property by at least $147,000 during the course of the marriage. Earline further argues that this increase in equity was acquired with marital funds, represents a marital asset, and substantially exceeds the $12,000 decrease in the building's value found by the chancellor.

¶20. We agree with Earline on this issue. Earline clearly established that David used income that he earned during the marriage—i.e., marital funds—to increase his equity in the Stateline Road building. David's earnings clearly would have been marital property if he had simply deposited the funds in a bank account. Those funds did not lose their character as marital property because David instead used them to purchase equity in another asset. *See Stroh v. Stroh*, 221 So. 3d 399, 409 (¶30) (Miss. Ct. App. 2017) (holding that equity in real estate obtained with income earned by the husband during the marriage was a marital asset); *Gutierrez v. Bucci*, 827 So. 2d 27, 38 (¶62) (Miss. Ct. App. 2002) (holding that use of marital funds to pay down a mortgage creates a marital asset).

¶21. Therefore, the chancellor clearly erred by finding that there was no increase in the value of this property to equitably divide with Earline. Accordingly, we reverse and remand

7

for the chancellor to consider an equitable division of this marital asset, that is, the increase in David's equity position in the Stateline Road building during the course of the marriage. Of course, "an equitable division of property does not necessarily mean an equal division of property," and the chancellor may consider "all relevant factors." *Stroh*, 221 So. 3d at 410 (¶31) (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994), and *Wideman v. Wideman*, 909 So. 2d 140, 144 (¶14) (Miss. Ct. App. 2005)). We do not dictate any particular division but only require the chancellor to consider and equitably divide this marital asset.

## II. Alimony

¶22. As noted above, Earline also argues that the chancellor abused her discretion by not awarding alimony. "[W]hen we reverse a court's division of marital property, we must also reverse any accompanying award or denial of alimony." *Faerber v. Faerber*, 13 So. 3d 853, 863 (¶39) (Miss. Ct. App. 2009). We do so based on a recognition that "[a]limony is not a completely independent financial issue in a domestic case, in which its consideration is hermetically sealed from other financial matters." *Buckley v. Buckley*, 815 So. 2d 1260, 1262 (¶10) (Miss. Ct. App. 2002). Rather, the division of property and the need for alimony are closely connected, and a change in the division of property may affect the need for alimony. *Segree v. Segree*, 46 So. 3d 861, 866 (¶13) (Miss. Ct. App. 2010). "Accordingly, we must reverse and remand on [the] issue [of alimony] as well," *id.*, not because the denial of alimony was error but only so that the chancellor may consider these related issues together on remand.

### III. Contempt

¶23. Earline argues that the chancellor erred by finding her in contempt and awarding attorney's fees to David. Earline argues, first, that she was not in contempt and, second, that David failed to obtain or serve her with a Rule 81 summons. *See* M.R.C.P. 81(d)(2), (5). We address Earline's arguments in turn.

#### A. The chancellor did not err by finding Earline in contempt.

¶24. The divorce decree entered on March 6, 2019, required David to pay Earline $20,000 for her equity in the marital home within thirty days of the entry of the decree, and it required Earline to execute a quitclaim deed "[u]pon . . . payment" by David. The decree was based on the chancellor's prior opinion, which was entered on February 20, 2019. The opinion similarly required Earline to sign a quitclaim deed "upon David's tendering to her $20,000.00 for her one-half of the equity." The opinion further stated that "[t]his should be accomplished within thirty days of the [divorce decree]." David complied by tendering a trust check for $20,000 and a quitclaim deed to Earline prior to the entry of the divorce decree on March 6, 2019.

¶25. Pursuant to the divorce decree and the chancellor's opinion, Earline should have signed the quitclaim deed promptly upon receipt of the $20,000 payment from David. At the very latest, she was required to sign the quitclaim deed within thirty days of the entry of the decree, i.e., no later than April 5, 2019. Earline failed to sign the quitclaim deed by April 5 as required by the divorce decree. Nor did she file a motion to stay the judgment or any other type of post-trial motion. As a result, David filed a motion for contempt on April 9.

9

¶26. On April 10, 2019, Earline did file a motion to stay the judgment pending appeal, pursuant to Mississippi Rule of Appellate Procedure 8(b), and a "Response" to David's motion for contempt. Earline also eventually signed the quitclaim deed on April 16, 2019. Following a hearing on May 13, 2019, the chancellor denied Earline's motion to stay the judgment pending appeal.

¶27. Earline's primary argument is that her motion to stay the judgment pending appeal operated as an automatic stay pending a ruling on the motion by the chancellor. *See* M.R.A.P. 8(b)(5) ("If a hearing is necessary [on a motion for a stay of the judgment pending appeal], the judgment shall be stayed during such hearing and for ten days following the trial court's ruling."). Earline reasons that because she signed the quitclaim deed while an automatic stay was in effect, she cannot be held in contempt.

¶28. However, Earline ignores that she was *already* in contempt before she ever filed her motion to stay the judgment. Earline's belated motion for a stay cannot excuse her prior failure to comply with the court's clear order.

¶29. "The Mississippi Supreme Court has consistently held that the inquiry in a contempt proceeding is limited to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court." *Brown v. Hewlett*, 281 So. 3d 189, 199 (¶37) (Miss. Ct. App. 2019) (quoting *Ellis v. Ellis*, 840 So. 2d 806, 811 (¶18) (Miss. Ct. App. 2003)). "The only defenses to a contempt violation include an inability to comply with the court order or that the court order was unclear." *Id.* (quoting *Ellis*, 840 So.

10

2d at 811 (¶18)). "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Id.* (quoting *Gilliland v. Gilliland*, 984 So. 2d 364, 369 (¶19) (Miss. Ct. App. 2008)). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id.* (quoting *Gilliland*, 984 So. 2d at 369-70 (¶19)).

¶30. In the present case, the chancellor's opinion and decree were abundantly clear that Earline was required to sign the quitclaim deed no later than April 5, 2019. David promptly complied with his obligation to tender $20,000 to Earline. However, Earline failed to comply with the court's order, and she offered no explanation or excuse for her failure. Indeed, Earline offered no testimony in response to David's motion for contempt. The only evidence she offered at the contempt hearing was the belatedly signed quitclaim deed—which only confirmed that she had failed to comply with the terms of the divorce decree. Under the circumstances, we cannot say that the chancellor abused her "substantial discretion" by finding Earline in contempt. *Id.*

¶31. On appeal, Earline also makes a conclusory assertion that the chancellor's award of $4,200 in attorney's fees was "patently unreasonable and . . . an abuse of discretion." However, Earline offers no reasons or authority to support this claim. In the chancery court, David's attorney submitted an affidavit, which he supplemented at the final hearing, detailing his time and stating that his hourly rate was $300. The chancellor awarded David $4,200 for fourteen hours, including time spent preparing the motion and attending two hearings, at that rate. In the chancery court, Earline failed to challenge the reasonableness of the attorney's

11

rate or the hours he claimed. She also fails to address these issues on appeal. We conclude that the issue is waived for lack of any meaningful argument or citation of authority. *See Doss v. Claiborne Cnty. Bd. of Supervisors*, 230 So. 3d 1100, 1104 (¶10) (Miss. Ct. App. 2017) ("In the absence of meaningful argument and citation of authority, an appellate court generally will not consider an assignment of error. A cursory argument without further reason or explanation is inadequate." (citation, quotation marks, brackets, and ellipsis omitted)).

### B. Earline waived her objection to the lack of a Rule 81 summons.

¶32. On appeal, Earline also argues that the chancellor erred by finding her in contempt because David failed to serve her with a summons pursuant to Mississippi Rule of Civil Procedure 81(d). Discussion of this issue requires a brief recap of the procedural history of David's contempt motion.

¶33. On April 9, 2019, David filed a "Motion for Contempt and Other Relief" based on Earline's failure to sign a quitclaim deed.[2] David served the motion on Earline through her attorneys pursuant to Mississippi Rule of Civil Procedure 5(b)(2). However, David did not obtain or serve a summons as required by Rule 81. *See Pearson*, 106 So. 3d at 849 (¶18) (stating that Rule 5 service of a "motion" for contempt, "without a Rule 81 summons, was not appropriate").

¶34. Although no summons had been issued, Earline filed a written "Response" to David's

---

[2] David should have filed a *petition* for contempt. "A petition, not a motion, is to be filed where a party is seeking contempt." *Pearson v. Browning*, 106 So. 3d 845, 849 (¶17) (Miss. Ct. App. 2012).

motion for contempt *the next day*, April 10, 2019. Earline's response addressed David's motion on the merits and did not raise any objection related to the lack of a summons or service of process.

¶35. On May 13, 2019, the parties appeared before the chancellor for a hearing on David's motion. The hearing was not transcribed. The court granted Earline additional time to remove her property from the marital home and subsequently entered an order nunc pro tunc to May 13 that stated in part, "All issues raised in the Motion for Contempt and Other Relief, including any award of attorneys' fees, [are] continued and shall be heard on June 3, 2019, in the DeSoto County Courthouse in Hernando, Mississippi."

¶36. On May 29, 2019, Earline filed an "Answer and Counterclaim" to David's motion for contempt. In her counterclaim, Earline alleged that David had refused to allow her access to her personal property and had damaged and destroyed some of her property. Earline's answer addressed David's motion for contempt on the merits and did not raise any issue related to the lack of a summons or service of process. In addition, Earline's answer "admit[ted] that she [was] subject to the continued jurisdiction of the [chancery court]."

¶37. On May 29, 2019, Earline also filed a separate "Motion to Dismiss" David's motion for contempt. Earline's motion again responded to David's allegation of contempt on the merits. Near the end of her motion, Earline also asserted that David's motion was "procedurally invalid" because it "did not comply with *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (Miss. 2011)." The Supreme Court's decision in *Hanshaw* does hold that a Rule 81 summons is required to initiate a contempt proceeding. *Hanshaw*, 55 So. 3d at 146 (¶9).

13

However, Earline's motion did not explain that point of law or mention any issue related to a summons or service of process.

¶38. On June 3, 2019, consistent with the chancellor's prior order, both parties appeared at a hearing on David's motion for contempt and Earline's counterclaim for contempt. Earline appeared with her attorney, who told the court, "We've got a Motion to Dismiss. We're also ready on the Motion for Contempt if you can do the contempt that way." Earline's attorney then argued the merits of David's contempt motion and offered the quitclaim deed, which Earline had belatedly signed, as evidence that Earline was not in contempt. Earline then testified and called David as an adverse witness in support of her counterclaim for contempt. During the entire hearing, Earline never mentioned any issue related to the lack of a hearing or service of process. Following the hearing, the chancellor entered an order finding Earline in contempt.

¶39. Based on the foregoing, Earline argues that the chancellor's finding of contempt must be reversed due to David's failure to serve her with a Rule 81 summons. In contrast, David argues that Earline waived any objection to the lack of a Rule 81 summons. For the reasons that follow, we agree with David that Earline waived the issue.

¶40. To commence a proceeding for contempt, a party must obtain and serve a Rule 81 summons—even if the chancery court has continuing jurisdiction over the underlying divorce case. *Hanshaw*, 55 So. 3d at 146 (¶9). However, the respondent may waive the requirements of Rule 81 by appearing at a hearing on the issue of contempt and defending the charge on its merits without raising any objection related to service of process. *Isom v. Jernigan*, 840

14

So. 2d 104, 107 (¶¶9-11) (Miss. 2003); *Dennis v. Dennis*, 824 So. 2d 604, 610-11 (¶¶16-18) (Miss. 2002).

¶41.　For example, in *Isom*, the ex-husband (Jay) failed to comply with Rule 81 because he mailed a Rule 81 summons to his ex-wife's attorney but never attempted to serve his ex-wife (Kelly). *Isom*, 840 So. 2d at 105-06 (¶¶4, 7). However, the Supreme Court held that Kelly had waived the issue because her attorney appeared at the contempt hearing and defended the charge of contempt on the merits without raising any objection related to service of process. *Id.* at 105, 107 (¶¶5, 9-11).

¶42.　Similarly, in *Dennis*, the ex-wife (Gretchen) filed a "motion for contempt against" her ex-husband (David) and mailed a copy of the motion and a notice setting the motion for a hearing to David's attorney. *Dennis*, 824 So. 2d at 607 (¶4). However, "no summons was issued, and the motion and notice were not served upon David." *Id.* at 609-10 (¶13). The Supreme Court held that Gretchen failed to comply with Rule 81. *Id.* But the Supreme Court further held that David waived any objection related to service of process or due process because he appeared and "aggressively defend[ed] himself at the hearing" and "never made an objection pertaining to defective service from the beginning to the end of the hearing." *Id.* at 610-11 (¶¶16, 18).[3]

---

[3] In contrast, in *Hanshaw*, *supra*, the responding party did *not* waive her Rule 81 objection because the chancery court never held a contempt hearing, and the responding party "was never given an opportunity to present evidence on her behalf before a finding of contempt was made." *Hanshaw v. Hanshaw*, 55 So. 3d 170, 174 (¶16) (Miss. Ct. App. 2009), *aff'd in relevant part*, 55 So. 3d at 146 (¶10) (reversing the chancellor's contempt finding because the responding party "did not receive proper notice *or* an opportunity to defend against the charges in a contempt hearing" (emphasis added)).

¶43. With respect to the issue of waiver, there is no material difference between this case and *Dennis*. As in *Dennis*, David served Earline's attorney pursuant to Rule 5 rather than serving Earline pursuant to Rule 81. *See Dennis*, 824 So. 2d at 607, 609-10 (¶¶4, 13). Earline then filed multiple written responses to David's contempt motion. Furthermore, Earline made no objection related to a lack of summons or service of process in her "Response," in her "Answer," or at the hearing on contempt. As noted above, Earline did bury one obscure and unexplained reference to a relevant case (*Hanshaw*) near the end of her "Motion to Dismiss." However, at no point in the proceedings in the chancery court did she articulate any objection based on the lack of a summons or service of process, and she never mentioned Rule 81 in any of her written responses or during the contempt hearing. Rather, she appeared at the hearing, defended against the charge of contempt on the merits, and "never made an objection pertaining to defective service from the beginning to the end of the hearing." *Dennis*, 824 So. 2d at 611 (¶18). By doing so, she waived any objection based on the absence of service of process. *Id.*

## IV. Leading Questions

¶44. In her final issue, Earline argues that the chancellor erred by overruling her objection to a leading question by David's attorney during David's testimony at the contempt hearing. Earline had called David as an adverse witness in support of her counterclaim for contempt. David's attorney then "cross-examined" David. After David's attorney asked several leading questions, Earline's attorney objected:

> Q:    Isn't it true, Mr. Wallace, that you were trying to move/relocate from the former marital home to a new house?

16

A:      Yes, sir.

[Earline's attorney]: Judge, he's asking his client, "Isn't it true . . ." I think maybe he's leading the witness.

THE COURT: What's your objection?

[Earline's attorney]: Leading.

[David's attorney]: Cross-examination, Your Honor.

THE COURT: Sustained -- no, cross-examination --

[David's attorney]: He's on cross-examination.

THE COURT: -- overruled.

After the chancellor's ruling, David's attorney asked several more leading questions.

¶45.    Our Supreme Court has explained that counsel generally should not be allowed to use leading questions to "cross-examine" a "friendly witness" called by the opposing party as an adverse witness:

> It is often necessary that a plaintiff call a witness who is identified with the defendant in order to establish facts essential to a prima facie case. That witness's overall testimony may be adverse to the plaintiff. It would not be fair to allow the defense to establish its case during the plaintiff's direct case by asking leading questions of a friendly witness.

*Deshpande v. Ferguson Bros. Constr. Co.*, 611 So. 2d 877, 879 (Miss. 1992). In the absence of specific reasons why leading questions are necessary, the trial court abuses its discretion by allowing counsel to lead a friendly witness. *Id.*

¶46.    Here, there was no reason or need for David's attorney to lead his own client. Leading questions are not proper when, as in this case, "cross-examination is cross-

17

examination in form only and not in fact." M.R.E. 611(c)(1) advisory committee note.[4]

Therefore, the chancellor abused her discretion by overruling Earline's objection and permitting leading questions. *Deshpande*, 611 So. 2d at 879.

¶47. However, we will not reverse based on a harmless error. M.R.C.P. 61. Earline fails to identify any concrete harm or prejudice she experienced because David's attorney was allowed to ask leading questions. Therefore, we conclude that the error was harmless and not a basis for reversal.

## CONCLUSION

¶48. We reverse and remand for further proceedings consistent with this opinion regarding the equitable division of the increase in David's equity in the Stateline Road building. We also reverse and remand on the issue of alimony—not because of any error but only for further consideration in light of any changes to the equitable division of marital property. Finally, we affirm the chancellor's finding of contempt and award of attorney's fees.

¶49. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON, P.J., GREENLEE, WESTBROOKS AND LAWRENCE, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

---

[4] Mississippi Rule of Evidence 611 provides that the court "[*o*]*rdinarily* . . . should allow leading questions . . . on cross-examination[.]" M.R.E. 611(c)(1) (emphasis added). "The purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as, for example, the 'cross-examination' of a party by his own counsel after being called by the opponent . . . ." M.R.E. 611 advisory committee note.

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶50.    I agree with the majority that we should reverse and remand for a determination of the increased value of the building which houses the husband's business and that alimony should be revisited in light of that reversal. However, because David did not serve Earline with a summons at all—and in fact one was never even issued—I believe longstanding precedent requires reversal of the contempt finding as well.

¶51.    Our Rules of Civil Procedure require that when a contempt action is filed "summons *shall* [be] issue[d] commanding the defendant or respondent to appear and defend at a time and place, either in term time of vacation, at which the same shall be heard." M.R.C.P. 81(d)(5) (emphasis added). Accordingly, our precedent firmly establishes that "[c]omplete absence of service of process offends due process and cannot be waived." *Mansour v. Charmax Indus. Inc.*, 680 So. 2d 852, 855 (Miss. 1996). This longstanding rule reaches to some of our earliest jurisprudence. *Jones v. Com. Bank of Columbus*, 6 Miss. (5 Howard) 43, 49 (1840) ("[T]he general rule [is] that no one shall be held bound by a proceeding without notice.").

¶52.    In the case at hand, Earline was never served with a Rule 81 summons. She could not have been because one was never issued. In my view, this case presents us with the same scenario from a case where the Supreme Court reversed for a complete failure to issue and serve a Rule 81 summons in a contempt matter. *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶10) (Miss. 2011). The Court held that "[b]ecause [the wife] did not receive proper notice or an opportunity to defend against the charges in a contempt hearing, we reverse the

19

chancellor's contempt finding and subsequent denial of [her] motion to reconsider." *Id*.

¶53.    As the majority notes, counsel for Earline did raise *Hanshaw*, if obliquely, in a motion before the trial court. I believe we should follow that case and reverse for lack of service of process.

¶54.    Nonetheless, it is true that over the years the Supreme Court has held that the general rule can be waived in certain circumstances. For example, in one case a wife claimed her attorney was served instead of her and that the summons improperly shortened her time to respond from seven days to six. *Isom v. Jernigan*, 840 So. 2d 104, 107 (¶12) (Miss. 2003). The Court held "[t]he requirements of Rule 81 were waived in this particular case by [the wife's] attorney making an appearance, failing to challenge the jurisdiction or the sufficiency of the service of process and offering evidence on her behalf[.]" *Id*. at (¶11).

¶55.    In any event, she "was intentionally secreting her daughter" and "clearly violating a chancery court order, and her attorney appeared on her behalf." *Id*. at (¶10). The Court held that "[i]f there was ever a case that service was waived, this is the case." *Id*. Despite the problems with service and timing, a Rule 81 summons had actually been issued and served in the case. *Id*.

¶56.    The majority sees this case as closer to *Isom* than *Hanshaw*. Yet *Isom* focused on when process was served in relation to a hearing on the merits; as the majority points out, process was actually issued in that case, just improperly served. In contrast, Earline's contempt proceeding was marked by a complete lack of process. When there is such a total lack of process, we should reverse.

¶57. Due process requires both issuance of process and service of process in accord with Rule 81. While certain particularities of Rule 81 might be waived, the complete absence of service of process violates a citizen's right to due process. Because a summons was not issued and Earline was not served at all, I believe we should reverse the contempt finding in this matter. As a result, I respectfully concur in part and dissent on this point.

**BARNES, C.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**